59   470
151  661
59   470
49a  664
59   470
180  642
59   470
114a ³257

# HENRY BAEHR

## v.

## CHRISTIAN WOLF et al.

1. TRUSTEE—*whether liable for neglect.* Where the owner of personal property placed the same in the hands of a third person, under an agreement that the latter should sell the property, and with the proceeds pay

the debts of the former, and while the property was so held it was seized under an attachment against the owner, and subsequently sold under a judgment in that proceeding, it was *held*, the person who was thus prevented by legal process, over which he had no control, from performing his agreement, could not be charged with the value of the property, or the loss occasioned by the forced sale.

2.  CONTRACTS *against public policy—whether equity will interpose as between the parties*.  Should a party, indicted for an alleged crime, convey his property to another as security for becoming his bail, and for the purpose of assisting the former to flee from justice, and the parties equally participate in the unlawful transaction, a court of equity would not interfere to restore the property to the grantor, as against a wrongful claim of the grantee that he was the absolute owner.  Such a transaction tending to impede or prevent the course of justice, is against public policy, and neither of the parties to it, if *in pari delicto*, could invoke the aid of a court of equity in respect to it.

3.  But if the parties to such a transaction do not stand *in pari delicto*,— as, if the grantee obtained the conveyance under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age, so that the guilt of the grantor was far less in degree than that of his associate in the offense, the grantee, a court of equity may, in a proper case, interpose to compel the grantee to relinquish his unjust claim to the property.

4.  So in this case, a party having been indicted, and discharged upon bail, the surety on his recognizance, who was his brother-in-law, and the wife of the latter, who was a sister of the accused, advised him to convey his property to such surety and leave the country.  The accused, although alleging his innocence, yet being apprehensive of danger, followed the advice, made the conveyance, and fled.  On his return afterwards, and seeking to recover his property on the ground the conveyance was intended only as a mortgage to indemnify his bail against loss, a court of equity, regarding the advice given to the accused as for the purpose of getting his property by taking advantage of his fears, through an undue influence, and the parties therefore not *in pari delicto*, granted the relief sought.

5.  SUBSEQUENT PURCHASER—*estoppel*.  Where a person who holds a contract of purchase of land, stands by and sees another purchase the same land from his vendor, paying his own money therefor, and fails to make known any claim in respect to the land, he will be estopped from afterward claiming that the second purchaser bought for his benefit.

APPEAL from the Circuit Court of St. Clair county ; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Messrs. G. & G. A. KŒRNER, for the appellant.

Mr. WM. H. UNDERWOOD, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

At the March term, 1860, of the St. Clair circuit court, three indictments were presented against the appellee Wolf, for complicity in an assault upon, and in the murder of, Andrew Koenig, and at the same term of the court Wolf entered into three separate recognizances in the sum of $300 each, with the appellant, Baehr, as his surety, for his appearance at the next term of the circuit court, to answer unto the indictments.

It is alleged in the bill that in July following, Wolf, for the purpose of indemnifying and saving harmless the appellant as his surety, conveyed to him a certain tract of land which he had purchased of one Price, and also delivered to him a bond for a deed to another tract of land which he held from Carpenter. Previous to these transfers, Wolf had been in the occupancy of these lands, and had made some improvements on the forty acres purchased of Carpenter.

It is further alleged that, at the same time, Wolf transferred to the appellant a large amount of personal property, and some growing crops upon the lands transferred and on certain leased lands, for the purpose of having the same applied to the payment of certain debts owing by the appellee Wolf. Soon after making the transfers of the real and personal property, Wolf fled from the country, and it does not appear that he ever returned until the year 1862 or 1863.

It appears that other parties were indicted at the same term of the court for the same crime, two of whom were sent to the penitentiary. Wolf forfeited his recognizance, and judgment was subsequently rendered against appellant, Baehr, for $600, no part of which was ever paid by any one. For some reason, the prosecution against Wolf was dismissed.

The object of the bill is to compel a reconveyance of these lands, and for an account of the rents and profits, and also an account of the personal property.

It satisfactorily appears from the master's report, which is fully sustained by the evidence in the record, that all the personal property was taken out of the possession of Baehr for the payment of the debts of Wolf. It was attached and sold by the officers of the law. It is insisted that Baehr agreed to sell the property at public sale and apply the proceeds to the payment of Wolf's debts, and it is sought to charge him with neglect in that regard. If such was the agreement, Baehr was prevented from performing the contract without any fault on his part. Immediately upon the flight of Wolf, the property was seized by his creditors under legal process, and it would be inequitable to charge Baehr with the value of the property or for any sacrifice that was caused by the forced sales. It was not in his power to prevent the sales or the sacrifices on the property.

The grave questions in the case arise on the relief sought as to the two tracts of land.

The grounds upon which the appellee Wolf predicates his right to relief are, that the appellant is a mortgagee in possession ; that the deed of the 2d of July, 1860, for what is known as the Price land, was not intended to be an absolute deed, but only as a security to save the appellant harmless as surety on the several recognizances, and that the Carpenter bond was transferred and delivered for a like purpose. On the other hand, the appellant insists that he took the property described in the deed, absolutely, and subject to no defeasance whatever, and that he acquired the other tract of land from Carpenter by a subsequent purchase, as he lawfully might.

The evidence is of such a character that it leaves no doubt on the mind that the deed for the Price land was not intended by the parties to be an absolute deed, and that the land was to be reconveyed in case the appellant did not have to pay the recognizances. Such, we think, is the only fair construction that can be given to the evidence.

It is insisted, however, that the contract was made with a view to assist Wolf to flee from justice, and hence that it was

against public policy and therefore void. Doubtless, if it was made with that view, and both parties equally participated in the unlawful transaction, it would be against a sound public policy and a court of equity would not interfere to relieve either party from the consequences that might flow from such an unlawful act. The law would leave the parties in the situation where they placed themselves, and to the consequences of their own corrupt conduct.

It is said that any contract that can impede or prevent the course of justice, is void. Chitty on Contracts, 674. It should, however, always distinctly appear that the parties are *in pari delicto*. Mr. Story, in his work on Equity Jurisprudence, says: "In cases where both parties are *in delicto* concerning an illegal act, it does not always follow that they stand *in pari delicto*, for there may be, and often are, different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age, so that his guilt may be far less in degree than that of his associate in the offense." 1 Story Eq. Jur. sec. 300.

The doctrine of the text rests on principles of sound reasoning and authority. *Osborne* v. *Williams*, 18 Ves. 378 ; *Pinkston* v. *Brown*, 3 Jones Eq. R. 494 ; *Phalon* v. *Clark*, 19 Conn. 420.

One party may not make use of his peculiar power over another to procure a contract which, in itself, is illegal, and contrary to public policy, and then invoke the aid of the law to enable him to retain that which he has obtained through fraudulent practices and artifices. It would contravene the settled law that the courts will protect the citizen against all such acts of oppression and deceit.

In the case under consideration, the conveyance was not made at the time the recognizances were entered into. At that date there is nothing in all the record that would indicate that Wolf had the slightest intention to flee from justice. It was not deemed necessary, in the first instance, to give any indemnity to the appellant as the bail of Wolf. It was a

subsequent suggestion. The evidence tends most strongly to establish the conclusion that the appellant and his wife operated on the fears of Wolf, and induced him to believe that if he did not flee from the country his bail would be raised and he would be placed in jail, and perhaps ultimately sent to the penitentiary. The evidence will reasonably bear such a construction; indeed, it can not be explained consistently with any other hypothesis. The wife of the appellant, who is a sister of Wolf, seems to have been the most active in producing this impression on the mind of her brother. It can not be denied, that just previous to the making of the deed and the delivery of the personal property, the appellant and his wife both persistently urged upon Wolf the necessity of going away until after the Fritz trial should be over, and the necessity of conveying the property to the appellant, which was done. The fears of Wolf were so operated upon, that he finally "took their advice." We must regard the evidence that establishes the fact of the undue influence of the appellant and his wife over Wolf, as the better evidence in the case. The facts and circumstances, about which there can be no dispute, added to the direct testimony, are sufficient to overcome the express denial of the appellant as to the use of improper influences to induce Wolf to depart from the country. No motive can be assigned for the conduct of the appellant, except it was to get control of the property, and ultimately the absolute ownership if Wolf did not return. The appellant at once entered into possession of the property and commenced to use it as his own, and his whole subsequent conduct strengthens this hypothesis.

It is said, that if Wolf was innocent of the crime with which he was charged, as he now alleges, he ought not to have taken the advice of the appellant and that of his sister, but ought to have remained and asserted his innocence before the court. Some allowance must always be made for the imperfection of the human judgment under certain circumstances. The conduct of persons accused of crime, although

they may be entirely innocent, is often most inexplicable. Such persons often magnify, many-fold, the dangers that surround them. Under such circumstances their fears are easily wrought upon, and the law will not always require of them the exercise of that clear and accurate judgment that would otherwise be expected.

Under the facts in this case, we can not regard the parties as standing *in pari delicto.* The moral turpitude attaching to the conduct of the appellant in the illegal transaction, is much greater than that of the appellee Wolf. In view of the relations existing between the parties, Wolf had the right to expect, from the appellant and his wife, the most candid and disinterested advice. It does not appear, from anything in the record, that the advice given was justified by the facts in the case. The appellant has not even stated the causes that induced him to give the advice that he evidently did. The record is singularly barren of everything that justifies, or that even tends to justify, the conduct of the appellant in the premises. We are, therefore, of opinion that Baehr held the land as indemnity against loss as security on the several recognizances, and that the appellee Wolf, is entitled to the relief sought by the bill, as to the land purchased of Price.

The facts in relation to the other tract of land, designated as the Carpenter land, are very different. Wolf purchased the land from Carpenter in 1859, and received a bond for a deed. He made no payments whatever, on it; the first payment became due in 1860; this payment was never made by Wolf, or by any one for him; the bond was not assigned to appellant. The utmost the appellee insists upon in regard to this bond is, that he delivered it to the appellant, and that it was to be returned to him in case the appellant did not have to pay the recognizances. The appellant denies that he ever even had the bond in his possession.

Wolf returned in 1862, certainly in 1863, and it does not appear that he ever made any effort to pay Carpenter for the land, or to get an extension of the time of payment. Nothing

was ever paid on the Wolf contract, and Carpenter, under the circumstances, had the clear right to declare the contract forfeited, and sell to whomsoever would buy. It was not until February, 1864, that the appellant purchased the land of Carpenter for his own use, at an advance of some $700 above the price that Wolf was to pay for it. Wolf had then been at home for certainly nearly a year, in the vicinity of where all the parties resided. The criminal prosecution had then been dismissed, and there is not the slightest authority in the evidence for saying that the appellant was then acting as the agent, trustee, or in any other capacity, for Wolf.

The appellant was not then, and never was, the trustee of Wolf, for this particular land. He never received from him even the shadow of an equitable title to it. It does not appear that Baehr made any use whatever of the bond, or availed of his relations with Wolf to effect the purchase from Carpenter. So far as the evidence discloses, Wolf had abandoned his contract, and Carpenter could lawfully sell the land to appellant or any one else. Wolf stood by and saw the appellant making the contract with Carpenter in his own name and for his own use, and paying out his own·money therefor, and he can not now be heard to say that the appellant was purchasing it as his trustee, and after the lapse of years come into a court of equity and say that he will take unto himself the profits of the transaction. When Wolf saw the appellant purchasing the land of Carpenter with his own money, and to his own use, he ought then to have asserted his rights if he had any ; but having remained silent for so many years, he will now be estopped to deny that the purchase was rightfully made by the appellant to his own use. There is nothing in the record to show that, at the time the appellant made the purchase from Carpenter, he occupied any fiduciary relation whatever towards Wolf.

Wolf had abandoned his contract with Carpenter, and the appellant had as clear right as any one to come in and make the purchase, and it would be a perversion of all the principles

of equity to allow him now to come in and say that the appellant, although he used his own funds in making the purchase, was still his trustee, buying for him, and that he will have an account of the rents and profits, and that he will have the land sold, and out of the proceeds pay back to the appellant his advances, with simple interest, and retain the surplus to his own use. There is not the shadow of an equity in the claim asserted by Wolf to the Carpenter land, and the circuit court ought to have dismissed the bill as to it.

On another hearing, the circuit court will again refer the cause to the master, to take and state the account as in its former interlocutory order, leaving out of the account the Carpenter land, and anything the appellant may have paid for improvements on that land, made by Wolf under his contract with Carpenter. If anything shall be found due to Wolf from the appellant, the court will direct it to be paid on the Kissel debt, and not to him, and may then order the interest of all the parties in the Price land to be sold to pay the Kissel debt and the judgments on the recognizances. The court will, however, decree that Wolf shall be allowed ninety days in which to pay the Kissel debt and the amount due on the judgments on the recognizances, before directing the sale of the land.

The appellee has assigned cross errors on the exceptions to the master's report, but we do not deem it necessary to comment on all of them. The account was correctly taken according to the order of the court, which was on the correct principle.

It is insisted that the appellee was not allowed enough for the rent of the premises. It is a sufficient answer to this objection to say, that he was allowed quite as liberally as the proof would warrant, and he ought to be well satisfied with the report in that regard.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*