## LEWIS KEITH
### V.
## WILLIAM P. BUCK.

1. COMPOUNDING A FELONY—NO GROUNDS FOR CRIMINAL CHARGE.— Where A, against whom proceedings in a case of bastardy had been instituted, and B, who was acting as his friend in the matter, were falsely told by the woman's agent that there were four several charges against A growing out of the bastardy case, and that he had writs out against him and he would be sent to the penitentiary unless he settled, and under the pressure of these fraudulent charges and threats A made the settlement, and procured of B a note of $500, which was given to the woman, and in return gave B his note for $500, upon which suit is now brought, and there was no ground for the two charges of attempted abortion and abduction. *Held*, that A was not guilty of compounding a felony, and was not *in pari delicto* with the woman and her agents. A can not, as against B, make such defense. The fact that no consideration passed as between A and the woman can not affect B.

2. IN PARI DELICTO.—In cases where both parties are *in delicto* concerning an illegal act it does not always follow that they stand *in pari delicto*, for there may be, and often are, different degrees in guilt.

ERROR to the Circuit Court of Winnebago county; the Hon. WM. BROWN, Judge, presiding. Opinion filed February 5, 1885.

The plaintiff in error, who was the survivor of G. W. Robinson (deceased), his co-payee of the note hereafter mentioned, sued defendant in error on his promissory note, given by him to plaintiff in error and G. W. Robinson (now deceased) for

the sum of $500, due one year after date, with interest at the
rate of ten per cent., payable annually, dated June 8, 1875.

The defense set up to the note grew out of the following
circumstances, viz.: Two or three days before the giving of
the note in question the defendant in error was charged by
one Tillie Lettow, who was then an unmarried woman of about
the age of fourteen years, of being the father of her unborn
child, and that she had instituted proceedings against him in
a case of bastardy, before Wm. H. Hovey, a justice of the
peace of the county, charging him with being its father, and
that a warrant had issued against defendant in error, who,
hearing of the circumstances, secreted himself so that the
warrant could not be served on him; and on Saturday night
preceding the Tuesday next following, on which the note was
given, about 12 or 1 o'clock at night, he went to the house of
the plaintiff in error, who was a farmer living in the country,
and woke him up and engaged him to act as his friend in the
matter, and procured him to go and see a lawyer to ascertain
what the law was in the matter; and on Sunday, the next day,
plaintiff in error went to Rockford and saw a lawyer, and
ascertained what the law was in a case of bastardy, that being
the only charge he knew of at that time. He went back into
the country to a Mr. Hawkeye's and called for defendant in
error, who came out of the barn. This was after night on
Sunday night. The next day, on Monday, at request of de-
fendant in error, the plaintiff in error went to see O. H.
Wright, the attorney who had charge of the bastardy pro-
ceedings for Tillie Lettow, and on his return at night he met
Mr. Wright and had a talk with him, and went that same
night and saw defendant in error, and told him what Wright
said and his offer of compromise, and advised him to settle,
as he understood that there were several charges he was liable
for; and that Wright, after first asking $1,500 and some ex-
penses, had offered to settle for $1,000, and left the offer open
till 11 o'clock the next day. On the next day plaintiff in error
met him in the road near Cherry Valley, where he informed
plaintiff that he had been to see Wright, and had settled it
for $1,000, and made arrangements to get the money, but

Keith v. Buck.

had been disappointed, and said plaintiff had to help him, or "he had to run the country and leave his family." Then plaintiff saw Robinson and they agreed to fix it up for defendant, and all three went to Belvidere the same day and went to Wright's office, and there the matter was fixed up. There were present Tillie Lettow, her father and two brothers, and Mr. Wright and plaintiff, and defendant and Robinson, and others. Wright refused to take defendant's note, and the matter was adjusted by the plaintiff loaning defendant $100 in cash, which was paid over, and by his turning out for defendant a span of black horses at $280, and plaintiff and Robinson gave Tillie Lettow their two judgment notes—one for $120 and one for $500. The defendant paid the $120 note after it had been put into judgment, and also paid the plaintiff for the horses and repaid the $100. The judgment note for $500 was dated June 8, 1875, due in one year at 10 per cent. interest. Then the note in suit was given to secure the plaintiff in error and Robinson for the $500 note given to Tillie Lettow by them. It seems that Wright, as the agent of Miss Tillie Lettow, falsely represented and stated to both the plaintiff in error and defendant, that there were four several charges against the defendant in regard to the facts growing out of the bastardy case, to wit: bastardy, abortion, abduction and seduction, and that he had writs out for him on all the charges, and that unless the bastardy case was settled and a full compromise made of the matter the defendant would be sent to the penitentiary; that under the pressure of these charges and threats the defendant made the settlement that he did, and gave the money and procured the plaintiff's note to be given to her, and gave the note in suit. The plaintiff, it appears, and Robinson, in his lifetime, were sued on the note given to Tillie Lettow by Wm. H. Hovey, to whom she had indorsed it in a few days after it was given, and judgment recovered and the plaintiff paid it in full, being $520, and costs and interest. Plaintiff in error was defeated in the court below and appeals.

Mr. J. C. Carver and Mr. Wm. Marshall, for plaintiff in

error; cited Steuben Co. v. Matheson, 5 Hill, 249; Catlin v. Henton, 9 Wis. 496; Baehr v. Wolf, 59 Ill. 474.

Mr. C. M. BRAZEE, for defendant in error; cited Gray v. Hook, 4 Comstock (N. Y.), 449; 2 Kent's Com. 466; Winston v. McFarland, 22 Ill. 38; Valentine v. Stewart, 15 Cal. 389; Gaston v. Drake, 14 Nev. 175.

LACEY, J. The main and only defense to the note sued on, which the defendant in error has any claim in reason to maintain, and the only one we feel called upon in the main to notice, is that the consideration in part of the settlement between him and Tillie Lettow was the compounding of the crimes of abortion and abduction, which she or her attorney had charged him with, and threatened to prosecute unless there was a compromise, and that the defendant was guilty of crime and moral turpitude in compounding them, and that the plaintiff, being cognizant of all the facts, and his agent in bringing about such a result, aiding and abetting therein, is as much guilty of moral obliquity in the transaction as the defendant, and therefore should not be heard in the courts or assisted in recovering from him the money he has paid out at his request, and for his benefit; that he and the plaintiff are *in pari delicto* and for that reason no recovery can be had.

The question arises whether under the facts and circumstances of the case and the law applicable thereto, there was any compounding of the crimes of abortion and abduction.

It is contended by the counsel for the plaintiff in error that if the defendant in error was not guilty of either of the crimes of abortion or attempted abortion, and abduction, and no criminal prosecution had been commenced against him, and that mere fraudulent threats were made by the Lettows and Wright, their attorney, to prosecute him for these criminal charges to frighten him into a settlement of a matter which he had a lawful right to settle, and the defendant yielded out of fear of criminal prosecution and settled by reason of such fear, and it was agreed as part of the consideration that the crimes

Keith v. Buck.

so charged were not to be prosecuted, then there was no compounding of a crime within the meaning of the law, and that defendant Buck would not be guilty of such moral turpitude as would avoid the agreement between him and the Lettows on the ground alone that the consideration was against public policy and void. That under such circumstances Buck would not be prohibited and barred from bringing his action against the Lettows to recover from them any consideration he may have paid them by reason of such agreement, in case the consideration had failed and he was otherwise entitled to bring the suit, on the ground that the contract was against public policy and he was *in pari delicto* with them. This question seems to be a new one in this State. There is no doubt, however, of the general doctrine that any agreement made in consideration of compounding a crime is utterly void, and that when this appears courts will refuse to aid either party to enforce such an agreement, but will leave the parties without any remedy where they left themselves. The courts regard such parties as being *in pari delicto* and not entitled to relief in court where one party refuses to perform the agreement. But the question, so far as we have been able to discover, has never been raised in this State, as to whether in case there are no grounds for the criminal charge and no prosecution has been instituted, there can be any compounding of such false charge as to bring the case within the general rule with all its consequences. And in other States we can find but four cases where the decision turned directly upon this point, to wit, James v. Roberts, 18 Ohio, 548; Chandler v. Johnson, 39 Georgia, 85, and Catlin v. Henton, 9 Wisconsin, 496, and Steuben Co. National Bank v. Matheson, 5 Hill (N. Y.), 249. In the last cited case one of the grounds for demurrer to the plea was that it failed to aver that the crime of forgery had been in fact committed. The court says, "The plea is bad, I think, for the single reason that it fails to aver the fact either of a forgery or a criminal uttering of the note."

"In the case before us it is not averred that a criminal prosecution had been instituted. If the plea had shown thus much and an agreement to stop the prosecution or in any way em-

barrass its course, that would have been illegal and vitiated the
bond whether the prosecution had been founded on the truth
or not.   The public have an interest that such prosecutions
should be carried on to conviction or acquittal; and the plea
need not in such case aver the fact that the crime was com-
mitted; nor do the precedents contain such an averment." But
in case there is no prosecution instituted the court hold, in or-
der to make out a case of compounding of a crime there must
have been a crime committed.

The case of Catlin v. Henton, 9 Wis. 496, above cited, the
same rule is announced as in the above case cited from 5 Hill,
which is cited in the Wisconsin court in support of the doc-
trine.   The case of James v. Roberts, the facts were that
Roberts accused him of being guilty of the crime of perjury
and went by James' house and told him he was on his way to
get out a warrant for him, and by these threats of pros-
ecution frightened James into executing the notes and mort-
gage that he was trying to get relief from in the court, and
upon executing the notes and mortgage, received an agree-
ment from Roberts that he would not prosecute him on the
charge of perjury.   Roberts set up in defense the same claim
that is relied on in this case, that the contract was against pub-
lic policy and that James should not be heard by the court in
his prayer for relief.

The majority of the court in passing on the point say: "We
are of the opinion that James was entirely innocent of the
crime charged against him, and that this was known to all the
parties concerned; that the charge was got up merely for the
purpose of extorting money from him by operating on his
fears, and that fearing the consequences of prosecution, not-
withstanding his innocence, he executed the note and mort-
gage."

The court finds that the notes and mortgage were executed
through intimidation and fear and say that "where a party
through cowardice and fear do acts which are only calculated
to injure himself, they have never, in a legal sense of the term
been regarded as immoral or contrary to public policy."

" A true public policy requires that all groundless prosecu-

Keith v. Buck.

tions hould, if possible, be prevented, and that every facility shall be afforded the innocent to escape from such calamity, and we think an innocent party may with great propriety ask to be relieved from the consequences of a groundless charge." The court granted to James the relief sought against the notes and mortgage.

The next and last case is that of Chandler v. Johnson, 39 Georgia, 85. This was an action of assumpsit on a promissory note, given by Johnson and his co-makers to John H. Lovejoy, and indorsed to Chandler; the plea set up in defense of the note was that it was given in consideration of compounding a felony, to compromise the offense of stabbing committed by Johnson on Lovejoy. No legal proceedings were instituted against Johnson for the offense. The verdict was for plaintiff and appealed to the Supreme Court of Georgia on a new trial being granted. The point in controversy arose on the instruction given to the jury on the trial, which was " that there must be proof that a felony was actually committed before the note sued on could be deemed illegal on the ground of having been given in whole or in part to compound a fel- ony, and that the jury must determine from the evidence whether in fact a felony had been committed or not." The court in deciding upon the carelessness of this instruction said, " The charge of the court, that the defendant must prove that a felony had been actually committed was, we think, too strong and calculated without explanation to mislead the jury. The natural inference from the charge is that it was upon the de- fendant to make out a clear case of guilt on his part. We do not think this is the law. It is sufficient if there be a *bona fide* charge against the defendant of a felony. Any stronger case than this required to defend an act tinctured with illegal- ity by reason of its being given to compound a felony, would make the law a farce. It is a high requirement of public policy that felonies shall be punished, since the law frowns upon any attempt to suppress the investigation of such a charge, and the agreement not to prosecute is the illegality. Chitty on Contracts, 582, and notes."

It seems from the decision in the last case cited that the

charge must be *bona fide*, that is, made in good faith.   We think that if it was a fraudulent charge, made with sinister de-sign for the purpose of extorting money, even under the de-cision of the Chandler-Johnson case, it would not be illegal for the accused to yield to such an extent as to deprive him of the right to maintain his action for the recovery of his rights.

We are not called upon by the facts in this case, or the claim made by counsel, to decide whether the rule announced by the courts of New York and Wisconsin, above cited, is cor-rect as broadly as there laid down, but only whether under the facts of this case the defense that the contract is contrary to public policy can be maintained.

The facts are scarcely disputed.   The evidence of the de fendant in error is allowed by him to stand as the truth in the case, and the evidence of a party to the suit is always re-garded by the courts as against himself, of having peculiar force and weight and generally conclusive against him. What does he testify to in regard to the matter of abortion and ab-duction?   He says in his testimony, speaking of what took place at the time the note was executed, " After the execution of the note I told Keith it was a put up job to get money; that there was no ground for any such charges.   At the time the note was given they told me there were four charges and they would sock me for on all; it was given to settle all the four charges, nothing else."     *     *     *     " When we went to Belvidere he told Wright there was no abortion and Wright says, ' Wait till those two doctors come out and we will see.' Then he went into the office and we gave the notes."

In the affidavit which he made for the purpose of a new trial in the case of Hovey v. Keith and Robinson, on their $500 note, and which he introduced in evidence in this case on the trial in the court below, he says:

" The said note was given in settlement of charges of bas-tardy, of attempt to procure abortion upon Tillie Lettow, of abduction and seduction, and upon an agreement of said Tillie Lettow that none of said charges should be prosecuted," etc., *     *     *     " and that before said note was given I saw Wright

and attempted to convince him that there was no possible ground for the charge of attempted abortion. That said Wright, for the evident purpose of alarming me, said 'Wait till the two doctors come up and swear and then see;' that I then asked him what Tillie Lettow said about it; that he replied 'Never mind now;' that when he spoke of the two doctors his manner was such as to leave me to fear that a job was put up on me, and that they had some doctors that would swear to something very hard against me; that then I did not know what constituted the crime of abduction. That I have since read the statute defining abduction and know its contents, to wit, Sec. 1, Chap. 38, R. S. 1874, and that I now know that I was in no sense guilty of abduction or of anything approaching to said crime; about six months after that the note was given."

This ought to settle the question against the defendant that there were no grounds for the charges of abduction or attempted abortion, and the charges were falsely and knowingly made by Wright and Tillie Lettow for the purpose of frightening him into paying her a large amount of money. This is almost identical in its facts, so far as the principle is involved, with the James case in 18 Ohio, *supra*, and of course is covered in principle by the cases in New York and Wisconsin, which even go farther. To hold that under the facts no compounding of crime took place in this case would not be opposed to the principle announced in the Georgia case, *supra*, for there it was held that the criminal charge should be *bona fide* made, and not fictitious.

Whether the Supreme Court of Ohio meant to hold that for no purpose could the case there decided be regarded as compounding a crime, or whether it meant to hold that under the facts as found by the court, the parties, James and Roberts, could not be held *in pari delicto*, so as to bar James from maintaining his action, is not so clear from what was said, nor does it make any difference, as any rule that would free the party asking relief from turpitude to that degree as would enable him to maintain his action in court, would answer every purpose. Sometimes a party is held to be *in delicto*

but not *in pari delicto*, and in such case the rule sought to be invoked by defendant in error would not bar plaintiff from maintaining his action. Story says in his work on Equity Jurisprudence: "In cases where both parties are *in delicto* concerning an illegal act it does not always follow that they stand *in pari delicto*, for there may be and often are, different degrees in guilt. One party may act under circumstances of oppressive hardship, undue influence, or great inequality of condition or age, so that his guilt may be far less in degree than that of his associates in the offense." 1 Story's Eq. Jur., Sec. 300, quoted in Baehr v. Wolf, 59 Ill. 470; see also other cases there cited. In that case the Supreme Court made the application of the principle to the following facts: Wolf being under indictment, charged with crime, and Baehr being on his bond for $600, afterward, with the aid of his wife, who was a sister of Wolf, represented to him that he stood in great danger of being convicted and sent to the penitentiary, and advised him to abscond, and by working on his fears procured him to do so, and to secure Baehr on his recognizance they induced him to deed them the real estate sought by Wolf to be recovered in that suit, and with the expectation on the part of Baehr and his wife, that Wolf would never return and they would get the land at a great sacrifice to Wolf. Wolf did leave, and Baehr took possession of the land, and the bill was filed by Wolf to recover it back, setting up that the deed was only a mortgage. Baehr set up as a defense that the deed was given for criminal purpose, to assist Wolf to run away and avoid trial, and claimed the benefit of the principle here invoked, that Wolf and himself were *pari delicto* in the transaction, and asked the court to refuse to aid Wolf on that ground. The court held that they were not under the rule laid down in Story *in pari delicto*, and granted the complainant the relief asked, to set aside the deed. In that case there was no question that it was illegal and against public policy that Wolf should be induced to abscond, or that he was in the wrong to leave and flee from justice. To the suggestion that if Wolf was innocent he ought to have remained and asserted his innocence before the court and not taken the advice, the

Keith v. Buck.

court say, by Justice Scott, who delivered the opinion, " Some allowance must always be made for the imperfections of the human judgment under certain circumstances; the conduct of persons accused of crime, although they may be entirely innocent, is often most inexplicable. Such persons often magnify manifold the dangers that surround them. Under such circumstances their fears are easily wrought upon, and the law will not always require of them the exercise of that clear and accurate judgment that would otherwise be expected. Under the facts in the case we can not regard the parties as standing *in pari delicto*. The moral turpitude attaching to appellant in the illegal transaction is much greater than that of the appellee, Wolf."

We think that the same rule should apply in this case. Through fears caused by threats of being sent to the penitentiary on groundless charges, the contract was extorted from Buck. The law in its humanity regards a person in such condition in a different light from the party who by fraudulent and dishonest means gets possession of another's property, and the courts of justice will not be closed against him on the ground that they are similarly guilty with the other party who overreached them. If, then, Buck was not guilty of compounding a crime, or was not *in pari delicto* with the Lettows, much less would the defendant in error, who is charged with being an accomplice with Buck in doing an illegal act, be guilty, and hence it follows that Buck can not, as against the plaintiff, make the defense sought to be made. The position of plaintiff in error in aiding Buck out of his troubles was that of a disinterested friend who lent him his money, property and credit, which saved him from prosecution and further public exposure, mortification and disgrace.

But this case has another phase. It may be that there was no consideration passing between the Lettows and Buck on account of the fraud practiced upon him by them, but of this we will not express an opinion.

Plaintiff in error, however, would not be barred from any recovery against him on that account for money advanced to Buck to liquidate such illegal consideration if any. The

money and credit were loaned at Buck's request, and it was no concern of plaintiff that the former did not receive value.

If the note given by plaintiff to Tillie Lettow was indorsed to Hovey he could have no defense if Hovey, as he claims, was an innocent holder without notice. And if he was not, and when the defendant had an opportunity to defend it and he consented to judgment on the note to Hovey, and plaintiff in consequence paid it, the latter would have the right to recover the amount of the judgment and costs, and interest paid on the judgment, with the interest specified in the note in suit from time of payment of judgment. We think the evidence largely preponderates in favor of the plaintiff on the question as to whether or not Buck consented to the entry of judgment in the Hovey suit. If Buck did not consent to the entry of judgment, before he can make any defense on the grounds that the Hovey suit was settled without his consent and against his will, he must prove by a preponderance of the evidence, 1. That the note was indorsed to Hovey with notice of defense; and, 2. That he had a good and valid defense to it.

It is charged in the defendant's brief that O. H. Wright, Hovey and plaintiff were intending to get the most of the $1,000. In substance, that there was a conspiracy between them to extort money from the defendant. If this were so, the plaintiff would have no meritorious claim against defendant, and should go out of court and pay all costs, but we see no warrant in the evidence for any such charge, there being none on which to base it.

We will not examine the instructions in detail, but say all are erroneous which are in conflict with the principles here announced.

The verdict is manifestly contrary to the evidence, and the judgment is therefore reversed and the cause remanded.

Judgment reversed and remanded.