THOMAS PAIGE *et al.*

*v.*

OLGA GREENWALD HIERONYMUS *et al.*

*Opinion filed June 17, 1899—Rehearing denied October 6, 1899.*

180　637
88a　393

180　637
89a　[1]290

180　637
e93a　[2]234

180　637
s192　547

1. CONTRACTS—*general rule as to relief against contract to compound a crime.* Where parties have entered into a contract to compromise a criminal offense or to prevent the prosecution of one charged with crime, a court of equity will ordinarily refuse aid to either party.

2. SAME—*exception as to relief exists where the parties are not in pari delicto.* Although a contract is illegal, so that both parties are to some extent involved in the illegality but are not *in pari delicto*, equity may, in furtherance of justice, aid the one comparatively the more innocent, even though the case involves moral turpitude.

3. SAME—*when party cannot ask relief against an illegal contract.* A woman of mature years and average intelligence, who by her own persistent efforts brings about a settlement with the former employers of her *fiancé* who had embezzled a large sum of money from them, with full knowledge that she had no legal right to compromise the offense and against the advice of her own attorney, is not in a position to ask relief in equity against the contract.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

HART & HOFFMAN, for appellants:

On complainant's allegations in her sworn bill and under the findings of the jury, and under the general finding of the decree "that all the material allegations of the bill are true," she is a party to an unlawful agreement, and *in pari delicto* with defendants. She can, then, have no affirmative relief. The courts will leave both parties where they have placed themselves, so far as she is concerned. *Miller* v. *Markle,* 21 Ill. 153; *Skeels* v. *Phillips,* 54 id. 309; *Neustadt* v. *Hall,* 58 id. 172; *Bestor* v. *Wathen,* 60 id. 138; *Railroad Co.* v. *Mathers,* 71 id. 592; *Compton* v. *Bank,* 96 id. 301; *Kirkpatrick* v. *Clark,* 132 id. 348; *Smith* v. *Rowley,* 66 Barb. 503; *Halloran* v. *Halloran,* 137 Ill. 110; *Allison* v. *Hess,* 28 Iowa, 389.

A party cannot rescind a contract for fraud and at the same time retain the consideration, in whole or in part, which he has received under it. He must rescind *in toto,* or not at all. *Buchanan* v. *Horney,* 12 Ill. 336; *Moriarty* v. *Stofferan,* 89 id. 528; *Smith* v. *Doty,* 24 id. 163; *Doane* v. *Lockwood,* 115 id. 494; *Horne* v. *Walton,* 117 id. 133; *Kelsey* v. *Snyder,* 118 id. 546; *Preston* v. *Spaulding,* 120 id. 214.

Where the intended use of goods or money does not involve moral turpitude, it is generally a matter of such indifference to the seller or lender of money that the mere knowledge thereof is not regarded as affording sufficient evidence to implicate him in the design, and prevent his recovery of the price or the loan from the buyer or borrower. *Holman* v. *Johnson,* Cowp. 341; *Faikney* v. *Reynolds,* 4 Burr. 2069; *Hodgeson* v. *Temple,* 5 Taunt. 181; *Tracy* v. *Tallmage,* 14 N. Y. 162; *Curtis* v. *Leavitt,* 15 id. 15; *Bichel* v. *Sheets,* 24 Ind. 1; *Green* v. *Collins,* 3 Clif. C. C. 494.

JOHN E. POLLOCK, and WILL & WHITMER, for appellees:

It is illegal in a private individual to suppress a prosecution for a crime or the evidence necessary to support such a prosecution, and a note given for money knowingly lent to be applied to such a purpose is void. *Plummer* v. *Smith,* 5 N. H. 553.

Where parties knowingly advance means to aid another to compromise a felony, and are present and assist in the negotiation, a mortgage taken by them for such consideration is void. *Fellows* v. *Hiering,* 23 How. Pr. 230.

Where a mortgage is executed with an understanding by the parties that a part of the consideration is that certain criminal proceedings shall be stopped, the agreement vitiates the mortgage,—and this, irrespective of the question whether the criminal proceedings are stopped or prosecuted to judgment. *Riddle* v. *Hall,* 99 Pa. St. 116.

If any part of the consideration of a contract is illegal the whole contract is void. *Henderson* v. *Palmer,* 71 Ill.

579; *Shenk* v. *Phelps*, 6 Ill. App. 613; 1 Parsons on Contracts, (6th ed.) 456; Chitty on Contracts, 657, 658; *Wolf* v. *Fletemeyer*, 83 Ill. 418; *Halthaus* v. *Kuntz*, 17 Ill. App. 439.

Per CURIAM:   On February 6, 1896, Olga Greenwald Hieronymus filed her bill of complaint in the circuit court of McLean county, against Thomas Paige and wife, Al. Daykin and Mark Daykin, (composing the firm of Daykin Bros.,) and Peter Whitmer, as executor of the estate of Peter Greenwald, deceased.   The substance of the bill is as follows:   In 1893 complainant, at that time twenty-three years of age and unmarried, was the owner of certain real estate and personal property left her by the will of her father, Peter Greenwald, deceased, by the terms of which will the property was to be held by Peter Whitmer, executor, until Olga reached the age of twenty-five years. In that year (1893) one Charles J. Whitney, *fiancé* of complainant, was charged by Daykin Bros., of Cleveland, Ohio, his employers, with having embezzled from them the sum of $10,000, and with having committed arson by setting fire to their office building.   Complainant, in settlement of Whitney's defalcation, and, as alleged, with the agreement and understanding that he would not be criminally prosecuted for the same, sought to secure to Daykin Bros. the payment of the agreed sum of $6000.   In carrying out that settlement she executed her notes, one amounting to $5000, to Thomas Paige, and another for $1000 to Daykin Bros., at the same time conveying to Paige all her interest in the real and personal estate left her by her father, in the hands of Whitmer, executor.   Thomas Paige and wife thereupon executed their notes to complainant for $5000, and she immediately endorsed them over to Daykin Bros.   Paige and wife then made a written agreement with her that upon the payment to them, within six years, of $5000, and to Daykin Bros. of $1000, they would re-convey said property to her.   The bill charged that the notes by her to the Paiges were without

consideration; that Daykin Bros. and the Paiges combined and confederated together to procure the conveyances; that Paige and wife hold her notes, deeds and assignment in trust, and solely as the agents of Daykin Bros.; that complainant was induced to enter into the transaction solely by means of the artful and fraudulent representations and combinations of Daykin Bros. and Paige and wife, whereby they represented the danger of Whitney to her, and that unless she did make such settlement they would cause Whitney to be sent to the penitentiary, whereas if she did make such settlement they would not prosecute him and he would not be punished. The prayer of the bill is that the notes, deeds and assignments executed by complainant be declared null and void, and that a suit then pending between Paige and Whitmer, executor, in which suit Paige was seeking to gain possession of the property held by Whitmer, executor, in trust for her, be enjoined.

Whitmer, the executor, answered admitting possession of the real and personal property in dispute, and alleging a willingness to deliver the same to the person entitled to it. Paige and wife answered denying collusion and agency, and that they had knowledge of any agreement by Daykin Bros. not to prosecute Whitney, and alleged good faith on their part. They also filed a cross-bill, in which they ask that Peter Whitmer be decreed to turn over the property to them. Daykin Bros. answered denying any collusion, agreement not to prosecute Whitney, or bad faith on their part.

By agreement of parties the issue of fact was submitted to and tried by a jury, to which certain questions were submitted, which, with the answers, were as follows:

"*First*—Was there an agreement between the Daykin Bros. and the Paiges and the complainant that Whitney should not be prosecuted for the crime of embezzlement or any other crime?"—A. "Yes."

"*Second*—Was the agreement and notes described in the bill executed and delivered by the complainant in consideration of the agreement aforesaid not to prosecute Whitney?"—A. "Yes."

"*Third*—Was there any other consideration for the agreement, notes and endorsements made by the complainant than that Whitney should not be prosecuted for the crime of embezzlement or any other crime?"—A. "No."

"*Fourth*—Were the Daykin Bros. and Thomas Paige and Medora Paige acting in collusion for the purpose of getting possession of the complainant's property?"—A. "Yes."

A decree was entered granting the prayer of the bill and dismissing the cross-bill.

The relief prayed by the complainant in the original bill is based upon the allegation that the notes, deeds and assignments executed by her were given in consideration that Charles J. Whitney should not be prosecuted, her theory being, that the contract, being illegal, was of no binding force or effect upon her. The general rule is, that where parties enter into a contract for the compromise of a criminal offense, or to prevent the prosecution or conviction of one charged with a crime, courts of equity will refuse to aid either party, but will leave them where they have placed themselves. An exception to the rule is stated in Pomeroy's Equity Jurisprudence, (vol. 2, par. 942,) where the rule is announced as follows: "When the contract is illegal, so that both parties are to some extent involved in the illegality,—in some degree affected with the unlawful taint,—but are not *in pari delicto*,—that is, both have not with the same knowledge, willingness and wrongful intent engaged in the transaction, or the undertakings of each are not equally blameworthy, —a court of equity may, in furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent." And further, in speaking of the inequality of guilt, it is said: "It exists when the con-

tract is intrinsically illegal, and is of such a nature that the undertakings or stipulations of each, if considered by themselves alone, would show the parties equally in fault, but there are collateral and incidental circumstances attending the transaction and affecting the relations of the two parties which render one of them comparatively free from fault. Such circumstances are imposition, oppression, duress, threats, undue influence, taking advantage of necessities or of weakness, and the like." The same doctrine was announced by this court in *Baehr* v. *Wolf*, 59 Ill. 470. See, also, 1 Story's Eq. Jur. sec. 300. The cases of *Tracy* v. *Tallmage*, 14 N. Y. 181, and *Lowell* v. *Boston Railway Co.* 23 Pick. 32, cited by appellants, do not conflict with this general exception. The latter case fully recognizes it.

It is insisted in the petition for rehearing filed herein by counsel for the appellants, as it was in their original arguments, that this exception has no application to a case involving moral turpitude, and authorities are cited which are supposed to sustain that position. We do not, however, find them in point, and are inclined to hold that under the authorities above cited, if the allegations of complainant's bill (to the effect that she was induced to enter into the contract "by means of the artful and fraudulent representations and combinations of Daykin Bros. and Paige and wife") were proven, she would be entitled to relief upon the ground that, though a party to the illegal contract, she was not *in pari delicto* with the defendants. However, after a re-examination of the cause and a careful consideration of all the testimony, we have been unable to find any proof upon which to base the conclusion that complainant was not equally guilty with the other parties to the alleged illegal transaction. In fact, she is shown to have not only voluntarily entered into it, but by her persistent efforts brought it about,—and that, too, with the full knowledge that she had no legal right to compromise the criminal offense of Whitney, and

against the earnest protestation of her own legal adviser and friends, in whom she should have placed confidence. She was a woman of mature years, and, so far as we can discover, of at least average intelligence. It may be inferred from her conduct, as shown by the evidence, that she was greatly distressed by the criminal acts of the man to whom she was at the time engaged and to whom she was doubtless strongly attached and was willing to sacrifice her property to relieve him; yet we cannot, from such inferences, assume that she was less guilty in the illegal-transaction than the defendants, who swear that they had no intention or purpose whatever to do an illegal act, and did not agree, in consideration of the execution of the notes, deed and assignments by complainant, that Whitney should not be prosecuted. Therefore, in any view of the law, the decree of the court below is erroneous, for the reason that the proof wholly fails to show that the parties were not *in pari delicto.*

This view of the cause is, of course, in harmony with the allegations of the bill that the consideration for the contract was the agreement that Whitney would not be brought back and prosecuted for his alleged crimes, and that such contract was absolutely void.

As the cause must be reversed and remanded for another trial, we refrain from discussing or passing upon the sufficiency of the evidence upon other questions involved.

For the reason indicated the decree of the circuit court must be reversed, and the cause will be remanded to that court for further proceedings.

*Reversed and remanded.*