## Leroy Snyder v. William Nelson.

1. Credibility of Witnesses—*Opportunity of the Appellate and Trial Courts to Determine.*—Where it is obvious that much of the testimony on one side or the other of a controversy is untrue, the jury and the trial judge, who saw and heard the witnesses, have a better opportunity than the Appellate Court to determine where the truth lies.

2. Remedies—*Of Persons Engaged in an Unlawful Business.*—Where persons are engaged in an unlawful business, as arranging to bet on a foot race, the law will not aid either one to recover from the other, money invested in such enterprise, but will leave each party in the position in which he has placed himself.

3. Appellate Court Practice—*Defenses Not Interposed in the Trial Court, Not to Be Raised.*—A defense not interposed in the court below can not be raised in the Appellate Court.

4. Same—*Refused Instructions Not Assigned for Error Are Waived.* —The refusal of instructions requested by a party and not assigned by him as one of the reasons for a new trial is waived and can not be availed of by the assignment of error upon the record in the Appellate Court.

Assumpsit.—Common counts. Appeal from the Circuit Court of Henry County; the Hon. W. H. Gest, Judge, presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed April 11, 1902.

Nels F. Anderson and Wilson & Moore, attorneys for appellant.

Charles E. Sturtz, Harry E. Brown and Emery C. Graves, attorneys for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

Nelson brought this action of assumpsit in the court below against Snyder and filed a declaration containing the common counts. Defendant pleaded non-assumpsit. There was a jury trial and a verdict for defendant. A new trial was granted. At the second trial plaintiff recovered a verdict for $699.74. Defendant moved for a new trial. That motion was denied. Plaintiff had judgment on the verdict, and defendant appeals.

Nelson and Snyder each live in Henry County, Illinois.

The evidence shows that in the fore part of August, 1899, they had interviews about the merits of two foot racers, Davis and Raymond, who had been rooming a few weeks with Nelson; that it was stated that Davis could outrun Raymond, and that a man named King, living at Brookville, Indiana, had faith in Raymond's superior speed and would back him for a large amount in a race; that money could easily be made by such a race; that it was agreed that Nelson and Snyder would each contribute $1,000 and would go to Brookville, get King to bet $2,000 on Raymond, have Snyder bet on Davis, and Nelson act as stakeholder, and have a race there and win, and divide the money. Davis and Raymond were present at one or more of these interviews, and apparently were to have some share in the profits. Nelson and Raymond went to Brookville. Snyder and Davis and another man went there a few days later. King was seen and the terms of a bet arranged, and it was agreed Nelson should be stakeholder. The race was to start at a certain bridge. Nelson went to the bridge at the hour fixed for the race, with a local man who had been selected as referee. No one else came. Nelson returned to the village and found that Snyder and the two racers had hired a carriage and driven across country twelve or thirteen miles to another railroad. Nelson took the next train out of Brookville, and reached home a day or more after Snyder did. The following day Nelson and a friend went to see Snyder, and had a conversation with him. These are about all the undisputed facts in the case.

On all the other main controverted facts the evidence is in sharp conflict. Nelson claimed the scheme was devised by Snyder, and presented proof tending to show that the real purpose was to defraud Nelson. Snyder claimed Nelson devised the scheme and was endeavoring to beat him, and offered proof tending to support that conclusion. Nelson testified that in a room in the hotel at Brookville and in the presence of Davis, on the morning the race was to take place, he counted out and gave Snyder $650 to bet on the race, and Snyder having a sore thumb, Nelson put the

money in Snyder's inside vest pocket and buttoned up his vest for him. Nelson testified that when he got home he took a friend named Maynard, and went to Snyder and demanded his money and that Snyder admitted he received the $650, but said "they" had taken it away from him. In this Nelson was corroborated by Maynard. Snyder denied he received any money·from Nelson, and denied that in the interview in the presence of Maynard after their return home he admitted receiving the money from Nelson. He claimed he left Brookville because of something he heard, and that the race was off before he left, but that he did not know that Nelson had been so advised. He intimated he had learned that Nelson was trying to beat him and that was why he left without advising Nelson. Each party offered other evidence tending to corroborate his claim, and tending to contradict the witnesses for the ·opposite party. Neither party called Davis, who was in the room when the money was paid to Snyder, if it was so paid at all.

It is obvious that much of the testimony on one side or the other is untrue. This was a second trial. The jury and the trial judge saw the witnesses and had a better opportunity than we have to determine who spoke the truth. The jury and the trial judge concluded that Nelson did deliver $650 to Snyder. We are inclined to the opinion that the preponderance of the proof as it appears on paper supports that conclusion. We certainly can not say the jury should have decided Nelson did not pay the money to Snyder.

Snyder, however, relies here upon the proposition that both Nelson and himself were engaged in an unlawful business in arranging to bet on a foot race, and that the law will not aid either one to recover from the other, but will leave each party in the position in which he has placed himself. (Shaffner v. Pinchback, 133 Ill. 410; Swigart v. The People, 154 Ill. 284; Bishop v. Am. B. Co., 157 Ill. 284.) To this Nelson presents three answers: First, he suggests that the final arrangements were made and the money was paid in Indiana. The transaction is not governed by

Illinois statutes. The statutes of Indiana, if any, upon the
subject, are not proved. The common law, Nelson argues,
must, therefore, be presumed to prevail there, and at com-
mon law it was not unlawful to bet on a race. Second, he
argues that the rule relied upon by Snyder does not apply
to an unexecuted transaction. There is a place for repent-
ance until the illegal act has actually been performed.
Though one has placed money in the hands of another for
an illegal purpose, he has a right, Nelson insists, to recede
and demand his money back before the illegal purpose is
carried out; and as Nelson demanded his money back when
no bet had in fact been made and no illegal act performed,
he therefore has a right to recover it in a court of law.
(Bernard v. Taylor, 23 Ore. 316; 18 L. R. A. 859, and note.)
Third, this defense was not interposed in the court below,
and therefore it can not be heard here.

Upon a careful consideration of the record we conclude
the third point above stated is well taken, and that we
need not consider the others. Nothing in the record sug-
gests the supposed illegality of the transaction as a defense.
No objection to any testimony was placed on that ground.
Defendant did not offer any instructions upon that subject.
Defendant seems to have based his defense in the court
below upon the simple proposition that he did not receive
any money from plaintiff. The third instruction was to the
effect that unless the jury believed from a preponderance
of the evidence that defendant received $650 of money
belonging to plaintiff, and retained the same, and deprived
the plaintiff of the same, they should find for defendant.
The fourth was that unless the jury believed by the pre-
ponderance of the evidence that defendant had received
from plaintiff money which belonged to plaintiff and had
not delivered the same to plaintiff, they should find for
defendant. The fifth was upon the credibility of witnesses.
These instructions were given at the request of defendant.
Defendant also requested the court to give the eighth
instruction to the effect that plaintiff charges that defend-
ant got his money intending to embezzle it, and must prove

Snyder v. Nelson.

that fact by more than a preponderance of evidence or he can not recover. This instruction did not raise the question that this arrangement was illegal as being a gambling transaction. This eighth instruction the court refused. The refusal of instructions requested by defendant was not assigned as one of the reasons for a new trial, and the refusal of that instruction was therefore waived, and can not be availed of by the assignments of error upon the record. (West Chicago St. R. R. Co. v. Krueger, 168 Ill. 586; I. C. R. R. Co. v. Johnson, 191 Ill. 594.) It is true the instructions given for plaintiff ignored the idea that the arrangement was void because providing for a wager, but so did defendant's instructions; and neither the one nor the other presented or suggested to the court the question that such an arrangement was void and would not be relieved against by the courts. If defendant was claiming in the court below that the arrangement under which plaintiff alleged defendant received the money was illegal, and plaintiff was thereby deprived of resort to the courts to recover it, it is not conceivable that on a second trial defendant would not have interposed some motion to exclude the testimony and direct a verdict on that ground, or would not have presented instructions giving the jury the law on that subject as applied to this case. As no question of illegality of the transaction as an agreement to engage in betting was raised by defendant in the court below, it would be unfair to plaintiff and to the court below to permit him to take that position here.

One of the defendant's reasons for a new trial was newly discovered evidence, and he filed with his motion his own affidavit and that of the foot racer Davis, whose true name, it seems, is Davis Godfrey. The point seems not to be relied upon here, and we deem it sufficient to say that while the testimony of Davis, stated in his affidavit, would be material and important, yet it can not avail defendant now. It must be presumed defendant ascertained at the first trial that plaintiff claimed Davis was present when the money was paid. He also knew Davis would be likely to know

the facts generally.  He does not show any diligence in seeking to find him and procure his attendance.  Moreover, there is no statement in either affidavit where Davis lives, or that he has any place of residence, nor is it suggested that he will attend another trial or give his deposition in this case.  The court would not have been warranted in awarding a new trial on the ground of newly discovered testimony.

The judgment is affirmed.