DANIEL EVANS

v.

JOHN FUNK.

*Filed at Ottawa, June 19, 1894.*

1. PROBATE JUDGE—*prohibited from acting as attorney in matters pending in his court.* The law (R. S., ch. 13, sec. 10) prohibits a judge of the Probate Court from acting as an attorney and counsellor at law in all matters pending in his own court; and this prohibition is not confined merely to suits pending in the Probate Court, but extends likewise to all suits pending in other courts which are so connected with an estate pending in such Probate Court as that judicial action may be required therein with respect to the same.

2. Where a suit is pending in the Circuit Court to set aside a will of a person whose estate is pending for administration in the Probate Court, the judge thereof is prohibited by law from soliciting or receiving from any person interested in said estate, any money, property or other valuable thing as compensation for inducing the executor of such estate to make a compromise or settlement of such will suit, regardless of what his motives may be. And if he receives any fee or compensation for services in effecting a compromise, it may be recovered back from him. The parties to such transaction are not *in pari delicto.*

3. ILLEGAL CONTRACT—*recovery of money paid where the parties are in pari delicto.* It is true, as a general rule, that where two or more persons engage in an unlawful enterprise, or agree to do an illegal act, or one prohibited by public policy, and spend or pay out money to each other, or otherwise in aid of some unlawful enterprise, the law will aid neither, but will leave them where they place themselves, but there are exceptions to this rule.

4. SAME—*whether the parties are in pari delicto.* In cases where both parties are *in delicto*, concurring in illegal acts, it does not follow that they are *in pari delicto*, for there may be, and often are, very different degrees in their guilt. One may act under circumstances of oppression, imposition, hardship, or undue influence, or great inequality of age, so that his guilt may be far less in degree than that of his associates in the offense. And there may be, on the part of the court itself, a necessity of supporting the public interest or public policy, in many cases, however reprehensible the acts of the parties may be.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit

Court of LaSalle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. DANIEL EVANS, *pro se.*

Mr. D. B. SNOW, Messrs. DUNCAN & GILBERT and Messrs. O'CONNOR, DUNCAN & ECKELS, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was assumpsit, brought in the Circuit Court of LaSalle county by John Funk, appellee, against Daniel Evans, appellant, to recover the sum of $2,500. A jury trial resulted in a verdict and judgment for appellee for said sum, and the judgment was thereafter affirmed in the Appellate Court of the Second District.

William Reddick, a citizen of Ottawa, in said LaSalle county, died testate in March, 1885, leaving an estate worth about a quarter of a million of dollars. By his last will and testament he gave to Elizabeth Burrier Funk Reddick, an adopted daughter, property valued at $40,000, to the county of LaSalle land worth about $10,000, and, after making some other bequests and legacies, gave the residue of his estate, amounting to over $150,000, to the city of Ottawa, for the purpose of establishing a public library. George W. Armstrong was nominated by the will as executor, and qualified as such.

Appellant Evans was elected probate judge of LaSalle county in 1882, and was in the exercise of the functions of that office when said will of William Reddick, deceased, was admitted to probate in the Probate Court of said county, and continued the incumbent of that office during the whole period of time covered by the various transactions involved in this suit.

Shortly after said will had been admitted to probate, the brothers and sisters of said William Reddick, deceased, who were his heirs at law, filed a bill in chancery, in the Circuit Court of LaSalle county, to contest its validity;

and they made Armstrong, the executor, the city of Ottawa, the directors of the public library, the county of LaSalle, Elizabeth Burrier Funk Reddick, and others, parties defendant to such bill. In December, 1886, the issues formed on said bill were submitted to a jury, but the result of the trial was a disagreement of the jury. Both in answering the bill and at the trial the defendant, Elizabeth Burrier Funk Reddick, was represented by Messrs. Mayo & Widmer as her solicitors.

Shortly thereafter negotiations were begun for a settlement of the controversy. One Andrew J. Reddick, a nephew of the deceased, had a power of attorney from the heirs, which authorized him to manage and control the suit. Pending the negotiations, and before a settlement was consummated, Elizabeth Burrier Funk Reddick died, her death taking place on or about the 20th day of February, 1887. An instrument in writing was executed and signed by the president, secretary and other members of the board of directors of the public library, which instrument, omitting caption and signatures, read as follows: "We, the undersigned directors of the Reddick Library board of the city of Ottawa, hereby authorize George W. Armstrong, executor of the last will and testament of William Reddick, deceased, to compromise and settle the above entitled suit in such manner as he may think best, by paying the contestants a sum not to exceed $7,000; and we hereby agree to allow him to retain from the funds of said library board said sum, or such proportion as would be our *pro rata* share, considering the value of said estate. And in case the estate of Elizabeth Burrier Funk Reddick refuses to pay any portion of such sum, then, in that case, we authorize him to pay the whole of said sum out of said library fund."

The settlement of the controversy, in regard to the will, was finally consummated on the 10th day of March, 1887, by the entry on that day of a decree in the Circuit Court of

LaSalle county, confirming the will, and by the payment on
the same day of $7,000 by Armstrong, the executor, to
Andrew J. Reddick. The said executor subsequently made
a report to the Probate Court, in which he credited him-
self with this $7,000, and said report was approved by the
Probate Court, Judge Evans presiding therein at the time
of such approval.

John Funk, the appellee, was a brother of Elizabeth
Burrier Funk Reddick, and at the time of her death it was
generally supposed that he was her only heir, and conse-
quently entitled to receive the $40,000, which had been
willed to her. Appellant took an active part in inducing
the settlement of the contest over the will. Appellee paid
to appellant the $2,500 here in controversy; and at the
time the money was paid appellant gave to appellee a re-
ceipt, which reads as follows:

"OTTAWA, ILL., March 10, 1887.

Received from John Funk $2,500, for and in settlement
of controversy in the Reddick will case, and the professional
services connected with said settlement. Made this 10th
day of March, 1887.                        DANIEL EVANS."

At the trial of the case at bar, appellee insisted and tes-
tified that the $2,500 was paid for the sole and only pur-
pose of being used by appellant, so far as might be neces-
sary, in paying the proportional amount to be paid by him
out of his share of the estate in securing a settlement; and
that no part of it was paid to appellant for legal services
or attorneys' fees. On the contrary, appellant insisted and
testified that said sum of money was paid him as attorney's
fees for services rendered to Elizabeth Burrier Funk Red-
dick in her lifetime, and to be rendered by him in procur-
ing a final settlement of the will in controversy.

In the opinion filed in this case in the Appellate Court,
it was said: "The statute of this State (R. S., chapter 13,
section 10) provides as follows, 'No person who holds a

commission as justice of the Supreme Court or a judge of any court of record, shall be permitted to practice as an attorney or counsellor at law in the court in which he presides.' On the trial the court gave the jury, among others, the following instructions:

9. 'The jury are further instructed that the law prohibits the judge of the Probate Court from acting as an attorney and counsellor at law in all matters pending in his own court, and that this prohibition is not confined merely to suits pending in the Probate Court, but extends likewise to all suits pending in other courts which are so connected with an estate pending in said Probate Court as to require of said Probate Court official and judicial action with respect to the same, and when a suit is pending in the Circuit Court to set aside a last will and testament of a person whose estate is pending for administration in the Probate Court, the judge of said Probate Court is prohibited by law from soliciting or receiving from any person interested in said estate any money, property or other valuable thing, as compensation for inducing the executor of said estate to make a settlement or compromise of such will suit, and this is so, notwithstanding his motives were intended to accomplish what should be for the best interests of all parties concerned, without any wrong intention whatever in so doing.'

10. 'The jury are further instructed that it appears by the undisputed evidence in this case that Daniel Evans, the defendant in this case, has been judge of the Probate Court of LaSalle county from the first Monday in December, 1882, down to the present time; that the last will and testament of William Reddick, deceased, was duly admitted to probate in the Probate Court, and George W. Armstrong was duly given letters testamentary as executor by said court on the ———— day of March, A. D. 1885; that a suit was subsequently commenced in this court by the heirs of said William Reddick to set aside the will, and that said suit was finally compromised and settled by the payment by

said executor to said heirs of the sum of $7,000, which payment was duly reported by said executor to said court, through Daniel Evans, the judge thereof; and it further appears that said Daniel Evans received from said John Funk the sum of $2,500. And the jury are further instructed that, under the foregoing facts, even though it appears from the evidence, and the jury believe therefrom, that said Daniel Evans solicited and received from said John Funk said sum in consideration of having induced said executor to make said settlement of said will suit, the jury must hold that the act of said Evans in soliciting and receiving $2,500 was illegal and unlawful, and that he, the said Evans, had no legal right to solicit or receive said $2,500 from said Funk for such purpose; the law is against such transactions for considerations of public policy, although Daniel Evans' intention was to accomplish what should be for the best interest of all parties concerned, and although the result of the settlement was for the best interest of all parties concerned. The good intention and honesty of purpose of the defendant in the premises does not remove the law's prohibition of such transaction.'

"To the giving of which said instructions for the plaintiff and each of them the defendant, by his counsel then and there excepted.

"These instructions amounted to a construction of the statute above quoted, and, on the facts as claimed by appellant, were equivalent to directions to the jury to find against him, which they, in fact, did. Appellant now insists that these instructions did not correctly declare to the jury the law applicable to the conceded facts. The instructions declare that it was unlawful for appellant to demand or receive the money, and that it may be recovered back in this suit by appellee.

"Appellant contends that the prohibition of the statute against judges practicing law applies only to cases actually pending, and tried in the court over which he presides, and

that there is no prohibition against his practicing law, or engaging in the trial of causes in other courts, or any violation of public policy involved in such practice. This position may be conceded, so far as it relates to county and probate judges in this State, when the causes they try in other courts have no connection with the business or causes pending in their own courts. But it seems to us to be entirely too narrow a construction to give to the statute to hold that when an estate is pending in the county or probate court for settlement, and that when such settlement is temporarily suspended by the contest of a will or other collateral questions arising in another court, that the judge of the county or probate court can lay aside his character as a judge in the cause, and follow the case to another court and there become a partisan attorney for some interest against some other interest involved in the common estate; and after that contest is ended, and the case goes back to his own court for final administration, that he can then again assume the impartial and high duties of a judge, and settle conflicting interests in the case where he served some of the parties as an attorney as against the interest of the others.

"It seems to us the very statement of the claim and proposition suggests the only possible answer that can be given to it.

"Nor can it be material whether he was an attorney in the case as a peacemaker or otherwise, or whether his motives were good or bad, if he was there in his own interest, and for hire, both the statute and principles of public policy alike forbid that he should again act as judge in his own court where such cause or any of the matters involved, directly or incidentally, were to be again considered. We think this prohibition against appellant's right to act as an attorney in the will contest is clearly within the spirit, if not the letter of the statute. But even without any statute on the subject, the right of any one to act both as judge

and attorney at different times in the same cause, or in collateral questions arising out of the same cause of action, is so clearly incompatible with an impartial, pure and unfettered administration of public justice in the courts, and so contrary to the principles of public policy, that such claim can not be allowed under any pretense whatever.

"There was no error, therefore, in the instruction which informed the jury that appellant could not lawfully engage in that will controversy, and had no right to demand or receive the money for his services.

"The remaining question is: Can appellee recover this money back if he paid it to appellant as his attorney, as contended by appellant? It is insisted, that if appellant had no right to appear in this case and receive payment therefor, that appellee was equally chargeable with that knowledge, and that they are both engaged in an illegal act and *in pari delicto.* This maxim of the law is invoked in aid of the defense. It is true, as a general rule, that when two or more persons engage in an unlawful enterprise, or agree to do an illegal act, or one prohibited by public policy, and spend or pay out money to each other or otherwise in aid of some unlawful enterprise, the law will aid neither, and leave them where they place themselves. But this general rule has its exceptions, arising out of necessity or from unyielding principles of public policy or from the different conditions of the parties. The different degrees of turpitude, immorality or illegality may be so great between different persons engaged in such acts that the general rule will bend to meet the demands of such case and allow a recovery. In Story's Equity Jurisprudence, section 300, it is said that 'in cases where both parties are *in delicto,* concurring in illegal acts, it does not follow that they are *in pari delicto,* for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship or undue

42—151 ILL.

influence, or great inequality in conditions of age, so that his guilt may be far less in degree than that of his associate in the offense. And, besides, there may be, on the part of the court itself, a necessity of supporting the public interest or public policy in many cases, however reprehensible the acts of the parties may be.' In strict harmony with the principles announced by Story, are also the following cases: *White* v. *Franklin Bank*, 22 Pick. 181; *Tracy* v. *Talmage*, 14 N. Y. 162–193; *Quirk* v. *Thomas*, 6 Mich. 111; 1 Smith's Leading Cases, 708.

"We think this case falls within this exception to the general rule, and from the strongest necessity of upholding the principles of public policy in maintaining the purity and honor of the courts of justice free from all scandal or suspicion of improper conduct on the part of the judges. These parties were not *in pari delicto*. Appellant was a lawyer, and for many years a judge. We must presume, as a matter of fact, that he was familiar with the duties and obligations that his profession and his office imposed upon him, and that he knew, as a matter of fact, that he had no right to take this retainer and appear in that lawsuit as an attorney, because the very law he was engaged in administering and upholding forbid him that right. In addition to this, he occupied a place of dignity, authority and power over the estates that came before him for settlement. Administrators and executors were in a large sense under his power and control. They had a right to trust him and rely upon his fidelity and impartiality in all things relating to the settlement of estates, and the distribution of the property and money belonging to the estates of others.

"The relation between the county or probate judge and executors and administrators, as well as heirs and legatees, is that of confidence, trust and dependence on the one hand and authority and power on the other hand.

"Appellee, on the other hand, was not a lawyer, and was in a large degree ignorant of the statute of this state and

the principles of the common law, and when in litigation was compelled to seek the assistance of those learned in the law.

"Appellant's influence seems to have had a controlling effect upon all parties to this suit. He persuaded Armstrong to pay $7,000 out of the estate to Jack Reddick. He induced appellee to pay him a large sum of money for serving him. * * * * * * We think this influence he exercised * * * * over John Funk was largely due to the fact that he was the probate judge and into whose hands the estate must go at last, whether the will was sustained or defeated.

"They were, therefore, not *in pari delicto* in the employment of appellant by appellee, nor in the payment by the one and the receipt by the other of the $2,500. The situation of the two was widely different, and the difference was largely in favor of the appellant."

We concur in the views thus expressed; and adopt them as our own.

It is urged in this court, upon this appeal, that the fundamental error of the Circuit Court and Appellate Courts was in assuming that an executor is authorized by law to settle or compromise a controversy as to the validity of a will, and that Armstrong settled the controversy as executor of the estate. We do not understand that said courts assumed any such thing. The controversy was between the heirs on the one side, and the devisees and legatees, including the residuary devisee and legatee on the other; and the residuary devisee and legatee assumed to effect a compromise, and the executor was its agent in so doing.

It is also urged that no matter in controversy connected with the will suit could ever come before appellant, as judge of the probate court, for adjudication. It may be answered that Armstrong had qualified and was acting as executor, and was a necessary party to the suit contesting the will; that the relation between him and the devisees under the

will was that of trustee and *cestui que trust;* and that the authority from the library board, one of the *cestui que trusts,* was to him as executor, and authorized him as such to pay out moneys belonging to the residuary estate in effecting a compromise, and take credit therefor in settling said fund. And, as matter of fact, the executor made a report to the probate court asking credit for this $7,000 paid out by him in effecting the settlement, and it was approved by appellant, as judge of that court. In the event the library board had contested this item, claiming credit for said $7,000, would appellant have been free and unbiased to approve or reject the report, as justice demanded? It would seem not. At all events, the intention of the statute was to prevent a judge being placed in a position where his judgment might be warped by the fact that he had received a fee as an attorney at law from one of the parties claiming an interest in the estate in litigation, relating to the settlement and distribution of the estate.

It is claimed that the probate court had no jurisdiction to adjudicate in regard to the $7,000 paid by the executor, in settlement of the contention made by the heirs. According to Judge Evans' own statement, the compensation which he claims is in payment of legal services which he rendered in bringing about a compromise of a will contest. The will contest, as is conceded, was in regard to a will which was admitted to probate in the court of which he was judge, and was approved of by him. The estate which passed by the will was then being administered by the executor under his orders and control. Such being the case, it was and is contrary to public policy for him to have accepted a retainer for the performance of such services. The retainer was, consequently, void, and there could be no recovery of compensation. It is, therefore, immaterial to inquire whether the probate court, under the circumstances, had jurisdiction to adjudicate upon the order given by the board of directors of the public library, or any other

matters occurring after the services were performed by appellant to effect the compromise in question.

It is urged that the authorities cited in the Appellate Court opinion, in its discussion of the question whether appellee can recover the money back, if he paid it to appellant, as his attorney, for the services testified to by the latter, have no proper application to the case at bar. And it is said that this court has decided in numerous cases that money voluntarily paid in consideration of the payee doing, or agreeing to do, something opposed to public policy or prohibited by statute, can not be recovered back; and that, in none of the cases decided in this court, did the court inquire into the relative degrees of delinquency or immorality of the parties, but assumed that participation in doing the thing opposed to public policy, or that was forbidden by the statute, put the parties *in pari delicto.* Counsel have manifestly overlooked the case of *Baehr* v. *Wolf,* 59 Ill. 470. There both parties were *in delicto,* and Wolf brought suit to recover property that he had transferred to Baehr; and we there said: "One party may not make use of his peculiar power over another to procure a contract which, in itself, is illegal, and contrary to public policy, and then invoke the aid of the law to enable him to retain that which he has obtained through fraudulent practices and artifices. It would contravene the settled law that the courts will protect the citizen against all such acts of oppression and deceit." The distinction which the law makes as between parties *in delicto* and parties *in pari delicto,* is fully recognized by the authorities. The law that governs in cases where the parties are not *in pari delicto,* is well stated by Lord Mansfield in *Browning* v. *Morris,* 2 Cowper, 790, in language which seems peculiarly applicable here. He there says: "But where contracts or transactions are prohibited by positive statute, for the sake of protecting one set of men from another set of men, the one, from their situation and condition, being liable to be oppressed or im-

posed upon by the other, there, the parties are not *in pari delicto;* and, in furtherance of these statutes, the person injured, after the transaction is finished and completed, may bring his action and defeat the contract.'' And the rule is formulated in Rule 98, of Greenhood on Public Policy, thus: ''But where money is paid to one in consideration of something opposed to public policy, or on a contract opposed thereto, and there is a moral compulsion on the part of the payer to pay it, or to make the contract; or where the law regards the payee as the principal offender, and its policy is aimed at his part in the transaction, and is adopted for the payor's protection, * * * * * it may be recovered.''

In our opinion, correct legal principles were enunciated in instructions 9 and 10 copied herein, and there was no substantial error contained in either of them. We also think there was no error in refusing the instructions offered by appellant, which were to the effect that if the jury believed from the evidence that the $2,500 in controversy was paid to appellant for services rendered by him in bringing about a settlement of the Reddick will contest, then the verdict should be for him.

Objections are urged to the rulings of the court upon other instructions that were given or refused, and to various rulings made in admitting or excluding testimony. There is no occasion, however, for considering them. Even if the court gave some instructions that were erroneous, or refused others that properly stated the law, or admitted testimony that was incompetent, or excluded testimony that was admissible in evidence, yet the rulings of the court in regard to said matters did appellant no injury. This follows from the circumstance, that whether the theory of the facts assumed by the appellee, and testified to by him, be true, or the theory of the facts assumed by the appellant, and testified to by him be true, the law of the case in either

event was with appellee, and he was entitled to verdict and judgment for the $2,500 in dispute.

The judgment of the Appellate Court is, therefore, affirmed.

*Judgment affirmed.*