Docket Nos. 97263, 97761 cons.–Agenda 26–September 2004.

WILLARD J. KING, JR., 
et al.
, Appellants, v. FIRST CAPITAL FINANCIAL SERVICES CORPORATION, d/b/a FCF Funding, Appellee.–RICKY JENKINS 
et al.
, Appellants, v. CONCORDE ACCEPTANCE CORPORATION 
et al.
, Appellees.

Opinion filed April 21, 2005.

JUSTICE GARMAN delivered the opinion of the court:

In these consolidated appeals from Cook County and Rock Island County, plaintiff mortgagors brought actions against defendant mortgagees alleging that defendants had engaged in the unauthorized practice of law. Plaintiffs alleged that defendants had prepared notes, mortgages, and other documents in connection with plaintiffs’ mortgage loan transactions and had unlawfully charged plaintiffs fees for those services. Plaintiffs also alleged claims for money had and received and for violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) ( 815 ILCS 505/2 (West 2002)). The circuit court in the King case granted First Capital’s section 2–615 motion to dismiss (735 ILCS 5/2–615 (West 2002)) the claim for unauthorized practice of law, but denied the motion as to the other counts of the complaint. Defendants in the consolidated cases (hereafter, the Jenkins case) filed motions to dismiss under sections 2–615 and section 2–619 (735 ILCS 5/2–619 (West 2002)). The motions were heard by one judge, who dismissed the complaints after hearing on the motions.

BACKGROUND

In No. 97263, the King case, all but one of the four counts of the complaint contained class action claims. Count I, the individual claim, alleged that First Capital violated the federal Truth in Lending Act (15 U.S.C. §1638 (2000)) and regulations thereunder by failing to accurately disclose the finance charge and amount financed. Count I prayed for statutory damages, attorney fees and costs. Count II alleged a cause of action for the unauthorized practice of law based upon First Capital’s preparation of the loan documents for a fee. Count III alleged that First Capital had violated the Consumer Fraud Act by failing to disclose to the Kings and the class members the material fact that the document preparation services for which it charged a fee constituted the practice of law, but were not performed by an attorney. Count IV alleged a claim for money had and received. It alleged that First Capital had obtained money through inequitable conduct in charging the document preparation fees and was obligated to make restitution. Counts II and III prayed for compensatory and punitive damages, in addition to attorney fees and costs. Count IV prayed for restitution and costs.

First Capital moved to dismiss counts II, III, and IV of the complaint. The motion alleged that there is no private right of action for the unauthorized practice of law absent allegations of negligence or misrepresentation, allegations not made by the Kings in their complaint. In addition, the motion alleged that because First Capital’s preparation of the loan documents was incidental to its business, it did not constitute the unauthorized practice of law. With regard to the complaint’s claims under the Consumer Fraud Act and for money had and received, the motion alleged that these claims were insufficient because they relied on the unauthorized practice of law claim.

The circuit court of Rock Island County granted First Capital’s motion to dismiss count II of the complaint, but denied the motion as to counts III and IV. The court granted First Capital’s request for a finding under Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)). The court certified the following questions: (1) whether a lender that prepares documents for use in loan transactions in which the lender is involved and charges the borrower for the preparation of those documents is engaged in the unauthorized practice of law, and (2) assuming 
arguendo
 that the answer to the first issue is “yes,” whether a private cause of action exists for the lender’s unauthorized practice of law. The appellate court concluded that First Capital’s preparation of documents and the charging of a fee to the Kings did not constitute the unauthorized practice of law. Accordingly, the court did not reach the second certified question. 343 Ill. App. 3d 404. We granted plaintiffs’ petition for leave to appeal. 177 Ill. 2d R. 315.

No. 97761, the Jenkins case, involved 37 class action cases consolidated for appeal. The allegations in 35 of the 37 Jenkins complaints were similar to those in the King case. They alleged unauthorized practice of law and violations of the Consumer Fraud Act, and included claims for money had and received. In two of the consolidated cases, the defendant lending institutions were alleged to have used the services of an independent document preparation service in preparing the loan documents. In addition to restitution, the complaints contained prayers for compensatory and punitive damages, and recovery of attorney fees and costs. Defendants filed section 2–615 motions to dismiss the complaints, alleging that (1) plaintiffs did not have a private right of action to sue for damages for the unauthorized practice of law, (2) defendants had not engaged in the unauthorized practice of law, (3) plaintiffs’ claims were barred by the voluntary payment doctrine, (4) the Consumer Fraud Act does not allow claims for the unauthorized practice of law, and (5) plaintiffs could not allege the elements of a Consumer Fraud Act claim. Several defendants are federal savings associations and one defendant is a national bank. Those defendants filed section 2–619 motions to dismiss the complaints on the ground that plaintiffs’ claims were preempted by federal law. The cases were consolidated for decision and the circuit court of Cook County granted the motions to dismiss. On appeal, the appellate court affirmed the circuit court’s decision on the sole basis that the voluntary payment doctrine barred plaintiffs’ claims. 345 Ill. App. 3d 669. We granted plaintiffs’ petition for leave to appeal. 177 Ill. 2d R. 315.

We allowed the motions of the following 
amici
 to file briefs in this case: Illinois State Bar Association (ISBA); Halt, Inc.; Illinois Bankers Association/American Bankers Association; Office of the Comptroller of the Currency; and Office of Thrift Supervision, Department of the Treasury. 155 Ill. 2d R. 345.

ANALYSIS

The parties have identified several issues for our review: (1) whether a mortgage lender that uses nonlawyers to prepare loan documents for the lender’s loans engages in the unauthorized practice of law when the lender charges the borrower a fee for preparation of the documents; (2) whether a private right of action to recover money damages exists under the Attorney Act (705 ILCS 205/0.01 
et seq
. (West 2002)); (3) whether plaintiffs’ complaints stated a cause of action under the Consumer Fraud Act; (4) whether a private right of action for money had and received due to fees charged in this case exists and whether the voluntary payment doctrine bars plaintiffs from seeking restitution; and (5) whether federal law preempts plaintiffs’ state law claims against defendant national bank and federal savings associations.

We find it unnecessary to address some of these issues. Our discussion is divided between two groups of cases. As to the first group, which includes the King case and 35 of the 37 consolidated Jenkins cases, we have found it necessary to address only the first issue identified above. Although we might have resolved the first issue on the basis of standing (the second issue identified above), doing so would make it necessary to address plaintiffs’ claims under the Consumer Fraud Act. This would require us to resolve the first issue in any event. The second group of cases, consisting of two of the Jenkins cases, requires a separate discussion because the allegations of those complaints differ from the allegations of the complaints in the first group.

A. Standard of Review

When the legal sufficiency of a complaint is challenged by a section 2–615 motion to dismiss, all well-pleaded facts in the complaint are taken as true and a reviewing court must determine whether the allegations of the complaint, construed in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. 
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 490 (1996). A motion to dismiss under section 2–619 admits the legal sufficiency of the plaintiff’s complaint, but asserts affirmative matter that defeats the claim. 
Wallace v. Smyth
, 203 Ill. 2d 441, 447 (2002). Review under either section is 
de novo
. 
Wallace
, 203 Ill. 2d at 447.

B. Whether Defendants Engaged in the Unauthorized Practice of Law By Charging a Fee Where Their Employees Prepared the Loan Documents

The following discussion relates to the King case and to all those cases consolidated in the Jenkins case, except Jackson v. Harbor Financial Group, Ltd., and Porter v. Smith-Rothchild Financial Co. & Docu-Tech, Inc.

The State requires minimum levels of education, training, and character before granting a license to practice law. The purpose of doing so is to protect the public from potential injury resulting from laypersons performing acts that require the training, knowledge, and responsibility of a licensed attorney. 
Herman v. Prudence Mutual Casualty Co.
, 41 Ill. 2d 468, 479-80 (1969). The power to regulate and define the practice of law is a prerogative of this court under the Illinois Constitution. Although the legislature may pass laws declaring the unauthorized practice of law illegal and may prescribe the punishment therefor, such statutes are merely in aid of the power of this court to control the practice of law. 
People ex rel. Chicago Bar Ass’n v. Goodman
, 366 Ill. 346, 349 (1937).

All parties agree, and we concur, that defendants’ preparation of the notes and mortgages in this case constitutes the practice of law. See 
People ex rel. Illinois State Bar Ass’n v. Schafer
, 404 Ill. 45, 53-54 (1949) (real estate broker who prepared deeds, contracts, and mortgages in connection with real estate transactions was practicing law).

Citing our decision in 
Chicago Bar Ass’n v. Quinlan & Tyson, Inc.
, 34 Ill. 2d 116 (1966), plaintiffs argue that defendants engaged in the unauthorized practice of law by charging plaintiffs a document preparation fee for preparing the notes, mortgages, and related documents for plaintiffs’ loan transactions. In 
Quinlan
, the defendant was a real estate brokerage firm that employed a number of brokers. The brokers customarily prepared offers to purchase real estate, contracts of sale, deeds, and other documents in connection with transactions for the sale and purchase of real estate in which the brokers were involved. The firm did not charge a fee for these services. The forms used were standardized forms which the brokers would complete by inserting relevant facts and striking provisions that did not apply. The plaintiff bar association alleged that these activities constituted the unauthorized practice of law and sought an injunction to stop the practice. The brokerage firm argued that completion of the documents required only ordinary business intelligence, that the practice had become an established custom, and that no harm had been shown to result. The firm also pointed out that no compensation was charged for the service. Noting that the case was very similar to the 
Schafer
 case, this court rejected the firm’s arguments:

“It is not decisive that defendant is compensated only by its commission, making no special charge for the services in question; nor is it relevant that the services are customarily provided by real-estate men and that no identifiable harm is proved to have ensued. As the appellate court pointed out, it is the character of the acts themselves that determines the issue. If by their nature they require a lawyer’s training for their proper performance it does not matter that there may have been a widespread disregard of the requirement or that considerations of business expediency would be better served by a different rule.” 
Quinlan
, 34 Ill. 2d at 120.

We held that the brokerage firm could prepare the preliminary contract or offer to purchase real estate where this required only the filling in of blanks with simple factual data. Preparation of this document coincides with the job the broker was hired to perform and which he or she is licensed to perform. However, the drawing or filling in of blanks on deeds, mortgages, and other legal instruments is not incidental to the performance of brokerage services. Preparation of these instruments requires the skill of an attorney and constitutes the practice of law. 
Quinlan
, 34 Ill. 2d at 121-22.

The exception recognized by this court in 
Quinlan
 to what would otherwise be the unauthorized practice of law has become known as the “
pro se
 exception.” It applies to the preparation of documents in situations where the party preparing the legal documents does so for his or her own benefit in a transaction to which the preparer is a party. Defendants acknowledge that their preparation of the notes and mortgages in these cases constitutes the practice of law. For their part, plaintiffs acknowledge that the lenders prepared the notes and mortgages for their own use in transactions to which they were parties. The question that we must answer is whether the charging of the document preparation fees by defendants here takes this case out of the 
pro se
 exception. Plaintiffs argue that the charging for the preparation of the documents, as a matter of law, constitutes the unauthorized practice of law, regardless of whether the 
pro se
 exception would otherwise apply. Defendants counter that the charging of a fee is irrelevant because the unlicensed practice of law is unlawful even if it is 
pro bono
.

The fees charged to plaintiffs in the mortgage transactions were disclosed on Form HUD-1 closing statements attached as exhibits to plaintiffs’ complaints. The fees were designated as document preparation fees. There was a separate place on the form to disclose any attorney’s fees. Plaintiffs do not claim that they received legal services from defendants. They do not claim that defendants held themselves out as providing legal services in connection with the loan transactions. Their sole claim is that the charging of these document preparation fees transformed otherwise legal conduct into illegal conduct. In doing so, they do not claim that they have suffered any harm as a result of defendants’ preparation of the mortgages and notes. They do not claim that defendants improperly prepared the mortgages and notes nor do they argue that the fees were not fully disclosed to them. They do not argue that they believed defendants were acting as their attorneys or were advising them on legal matters in any way.

This is an issue of first impression. No Illinois case, prior to the appellate court in King below, has addressed the question presented. The appellate court in 
King
 held that First Capital’s preparation of the mortgage and note fell within the 
pro se
 exception to the unauthorized practice of law despite the fact that First Capital charged a fee to recoup the cost of preparing the documents. The court rejected the Kings’ argument that the charging of a fee made First Capital’s conduct illegal, noting that this court in 
Quinlan
 held that it is the 
character
 of the acts that determine whether they constitute the unauthorized practice of law. The appellate court concluded that the charging of the fee did not change the essential nature of First Capital’s conduct. It did not hold itself out to be a legal advisor and did not prevent the Kings from obtaining legal advice concerning the documents. 343 Ill. App. 3d at 407-08. Justice Lytton, in a special concurrence, concluded that the charging of the fee changed the nature of the transaction because, when the Kings were required to pay the fee or forgo the mortgage, the transaction was no longer only incidentally beneficial to them. 343 Ill. App. 3d at 408 (Lytton, J., specially concurring).

Plaintiffs argue that the appellate court’s conclusion in 
King
 is inconsistent with this court’s decisions in 
Quinlan
, 
Schafer
 and 
People ex rel. Illinois State Bar Ass’n v. Peoples Stock Yards State Bank
, 344 Ill. 462 (1931). They maintain that the decision in 
Quinlan
 held that the 
pro se
 exception to the unauthorized practice of law does not permit the receipt of a fee, citing the following quotation from that case:

“ ‘ “Any one who wants to pay the price may purchase a set of form books and read and copy them. He may use them in his own business if he so desires. But when he
 advises others 
for a consideration, that this or that is the law, or that this form or that is the proper form to be used in a certain transaction, then he is doing all that a lawyer does
 when a client seeks his advice.
” ’ ” (Emphasis added.) 
Quinlan
, 34 Ill. 2d at 122, quoting 
Schafer
, 404 Ill. at 52.

While the court mentioned the charging of a fee, the overriding concern was about the giving of legal advice to others, as illustrated by the italicized portions of the quote. In fact, the question of compensation was not presented in 
Quinlan
. The court focused on the nature of the conduct alleged to have occurred in that case.

Neither do this court’s decisions in 
Schafer
 and 
Peoples Stock Yards State Bank
 support plaintiffs’ argument. 
Schafer
 involved a real estate broker who prepared deeds, mortgages, and contracts in transactions in which he was the broker. He charged no fee for these services. He also prepared these same documents for use in transactions in which he was not involved. For these services, he did charge a fee. In addition, he advised a woman concerning the disposition of her estate and prepared deeds and other instruments for her for a fee. The question before the court was whether the broker’s activities constituted the practice of law. In answering that question, this court focused, not on whether a fee was charged, but on the nature of the conduct. It noted that “practicing law” had been defined as “ ‘the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.’ ” 
Schafer
, 404 Ill. at 50-51, quoting 
Peoples Stock Yards State Bank
, 344 Ill. at 475.

The 
Peoples Stock Yards State Bank
 case involved a bank that represented customers in various legal transactions, both in and out of court, and charged fees for its services. The question there was whether the bank had practiced law. In holding that it had done so, this court focused, not on the fees charged, but on the acts performed by the bank. As the bank was not and could not be licensed to practice law, we held that the bank was engaged in the unauthorized practice of law. 
Peoples Stock Yards State Bank
, 344 Ill. at 477-78.

Plaintiffs also cite cases from other jurisdictions. In 
Miller v. Vance
, 463 N.E.2d 250 (Ind. 1984), employees of a bank who were not attorneys prepared two mortgages. No fees were charged for this service. In a foreclosure action, the holder of a third mortgage sought a ruling that the two other mortgages were void and unenforceable because the preparers were not attorneys and that the completion of the mortgages constituted the unauthorized practice of law. Referring to an earlier case, the Supreme Court of Indiana noted that it had previously held that the filling in of blanks in legal instruments that were prepared by attorneys and require only the use of common knowledge regarding the information to be inserted in the blanks does not constitute the practice of law. The court noted that preparation of the mortgages in the present case was incidental to and directly connected with the bank’s regular business of making loans, and therefore did not constitute the practice of law. The court went on to state that the bank employees could not give advice or legal opinions, nor could the bank make any separate charge for the preparation of the mortgage. 
Miller
, 463 N.E.2d at 253.

We note that the 
Miller
 court did not give any reason for its statement that no separate charge could be made for preparation of a mortgage by a bank’s employees. Its holding prohibiting the making of a charge was taken from an earlier case, 
State ex rel. Indiana State Bar Ass’n v. Indiana Real Estate Ass’n
, 244 Ind. 214, 224, 191 N.E.2d 711, 716-17 (1963). In that case, the court held that certain specified legal documents could be prepared by real estate brokers in transactions in which they were involved, but that no separate charge could be made by the broker for the preparation of the documents. In its holding, the court cited a Missouri Supreme Court case with approval, 
Hulse v. Criger
, 363 Mo. 26, 45-46, 247 S.W.2d 855, 862 (1952). That case held that no document preparation charge could be made by a real estate broker:

“However, he cannot properly make separate charges, in addition to his commission, for preparing any instruments or engage in the field of conveyancing and drafting contracts or other legal instruments for the public generally, with or without separate charge. Such conduct would not be any part of his business as a real estate broker but would be placing the emphasis upon conveyancing as a practice of law instead of on his services as a broker ***.” 
Hulse
, 363 Mo. at 44, 247 S.W.2d at 861.

The Missouri court also noted that making a separate charge for the document preparation would violate Missouri statutory law. The citation of 
Miller
 by plaintiffs here is of dubious assistance, since the activities there were not considered to be the practice of law.

Plaintiffs also cite a decision of the Supreme Court of Wisconsin, 
State ex rel. Reynolds v. Dinger
, 14 Wis. 2d 193, 198, 109 N.W.2d 685, 687-88 (1961), involving the validity of a rule adopted by the defendant real estate brokers board (board). The issues before the court were whether the completion by real estate brokers of standardized forms to transfer title to real estate belonging to their clients was the practice of law, and, if so, whether the board could authorize the practice by its licensed brokers. Plaintiffs assert the Wisconsin court held that real estate brokers could fill out standard form notes and mortgages where the documents are “incident to transactions in which they act as licensed brokers, provided that said brokers receive no extra compensation for filling in or completing such forms.” However, the passage quoted by plaintiffs regarding the prohibition against receipt of compensation was not a holding of the court, but rather was contained in the rule of the board that the court was reviewing. Accordingly, this case does not support plaintiffs’ position.

In 
Cain v. Merchants National Bank & Trust Co. of Fargo
, 66 N.D. 746, 268 N.W. 719 (1936), also cited by plaintiffs, the court stated that a person who is not a lawyer may draw instruments such as simple deeds, mortgages, notes, and bills of sale when they are related to transactions in which the person is interested, provided no charge is made for the preparation of the instruments. However, the court’s statement was 
dicta
 because the case before the court involved a bank that rendered services to third parties.

Likewise, 
Pulse v. North American Land Title Co. of Montana
, 218 Mont. 275, 282, 707 P.2d 1105, 1109 (1985), citing 
Cain
, 66 N.D. 746, 268 N.W. 719, held that a party may complete preprinted forms, such as simple deeds, notes, and mortgages, provided that the instruments are incident to real estate transactions in which the party is involved and no separate charge is made for their preparation.

Insofar as plaintiffs’ cited cases do not discuss why receipt of compensation is prohibited, they are of marginal assistance. Only in the 
Hulse
 case did the court explain why the making of a charge for preparing the instruments transformed lawful conduct into the unauthorized practice of law.

Plaintiffs argue that once defendants charged the fee for document preparation, they could no longer assert that they were acting on their own behalf because a 
pro se
 litigant does not receive payment from another for its legal services. Plaintiffs acknowledge that a layperson is entitled to represent herself in court and is protected by the 
pro se
 exception if she does. However, they argue that if she receives a fee for those legal services, her receipt of that money suggests that she is acting, not on her own behalf, but on behalf of the person paying the fee. Plaintiffs cite this court’s decision in 
People ex rel. Chicago Bar Ass’n v. Tinkoff
, 399 Ill. 282 (1948) in support of this contention. There, a disbarred attorney purported to represent himself in court in a matter in which he had procured the assignment of the interests of others in the litigation to himself as guardian for his minor son. His agreement with the true parties in interest provided that certain costs, including the costs of his handling the suit, should be deducted prior to dividing the net proceeds of the suit. This court rejected the attorney’s argument that he was merely acting 
pro se
 in the litigation, finding that the assignments were a subterfuge used to deceive the court as to the real parties in interest and to effectively nullify the order disbarring the attorney. 
Tinkoff
, 399 Ill. at 290.

Tinkoff
 is inapplicable to the case at bar. There, it was clear that the true parties in interest were persons other than the purported 
pro se
 litigant and that he was in fact representing them and not himself. Here, the documents prepared for use in the closing transactions were for the benefit of defendants. The notes evidenced plaintiffs’ indebtedness to defendants and the mortgages secured that indebtedness. Although the documents provided an incidental benefit to plaintiffs in the sense that their preparation was necessary to the completion of their transactions, it cannot be said that the primary benefit went to plaintiffs.

Finally, plaintiffs rely on section 1 of the Attorney Act (705 ILCS 205/1 (West 2002)) as decisive proof that the receipt of a fee for services that would otherwise come within the 
pro se
 exception turns such conduct into the unauthorized practice of law. That section provides in pertinent part:

“No person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State.

No person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney.

***

Any person practicing, charging or receiving fees for legal services
 within this State, either directly or indirectly, without being licensed to practice as herein required, is guilty of contempt of court and shall be punished accordingly, upon complaint being filed in any Circuit Court of this State. Such proceedings shall be conducted in the Courts of the respective counties where the alleged contempt has been committed in the same manner as in cases of indirect contempt and with the right of review by the parties thereto.” (Emphasis added.) 705 ILCS 205/1 (West 2002).

The Attorney Act was first enacted in 1874. The italicized language plaintiffs rely on has been in the statute since 1917. This court’s 
Quinlan
 decision, in which we first recognized the 
pro se
 exception to the unauthorized practice of law, was issued in 1966. Section 1 of the Attorney Act simply does not address the 
pro se
 exception. We note that section 11 of the Attorney Act allows persons to prosecute and defend actions in court on a 
pro se
 basis and allows corporations to represent themselves, through their managerial employees, in small claims actions. 705 ILCS 205/11 (West 2002). However, section 1, despite being amended on several occasions since it was enacted, does not explicitly address the 
pro se
 exception recognized in 
Quinlan
. Accordingly, plaintiffs’ reliance on the Attorney Act is misplaced.

For these reasons, we are not persuaded by plaintiffs’ arguments that the mere charging of a fee for document preparation, when the conduct is otherwise within the 
pro se
 exception, changes the nature of the transaction to one that becomes the unauthorized practice of law. Accordingly, we hold that the charging of a fee, without more, for the preparation of the loan documents by the lenders’ employees did not transform their conduct into the unauthorized practice of law.

C. Allegations of Unauthorized Practice of Law in the Jackson and Porter Cases

In the first group of cases, it was alleged that defendant lenders prepared the loan documents. However, in the Jackson and Porter cases, plaintiffs have alleged in their complaints that the document preparation fees were paid to Docu-Tech, an independent document preparation service. In the Porter case, Docu-Tech was made a party defendant. However, the plaintiff there later filed a motion to dismiss Docu-Tech from the action on the ground that Docu-Tech was not the corporation that handled the plaintiff’s loan transaction. The trial court granted the motion. In both cases, the closing statements indicate that the document preparation fees were paid to Docu-Tech. Each of the complaints contains two counts. Count I alleges the unauthorized practice of law and count II alleges a cause of action for money had and received.

We have already held that where the mortgage lenders actually prepared loan documents, through their employees, for transactions to which the lenders were parties, the charging of a fee did not take the transactions out of the 
pro se
 exception to the unauthorized practice of law. A different situation is presented, however, where a person or entity that is not a licensed attorney and not a party to the transaction prepares the loan documents. In such a case, the 
pro se
 exception is not available and the preparation of the documents constitutes the unauthorized practice of law. We emphasize, however, that it is the 
preparation
 of the documents–the filling in of blanks with the relevant information and the tailoring of the document to fit the particular transaction for which it is to be used–not the mere furnishing of legal forms for use by another, that makes the activity the unauthorized practice of law. As we have said, it is the 
character
 of the acts involved that determine whether one engages in the unauthorized practice of law. 
Quinlan
, 34 Ill. 2d at 120; 
In re Discipio
, 163 Ill. 2d 515, 523 (1994). A contrary holding would deter the provision of a legitimate service to those who use such forms in transactions to which they are parties.

The allegations of count I of the Jackson complaint state that (1) defendant lender, Harbor Financial Group, originates mortgage loans; (2) in connection with plaintiff’s loan transaction, the lender charged plaintiff a document preparation fee of $60 for filling out the note and mortgage and related documents; (3) the fee was paid to Docu-Tech; (4) the document preparation services were not performed by an attorney; (5) neither the lender nor Docu-Tech is a professional corporation consisting of attorneys licensed to practice law; and (6) it is the standard practice of the lender to charge a document preparation fee when it makes or arranges a loan. The complaint further alleges that the lender engaged in the unauthorized practice of law by performing document preparation services for a fee. Attached to the complaint is a copy of the closing statement, which contains an itemization of the settlement charges and shows application of the loan proceeds. It shows a charge of $60 to Docu-Tech for document preparation.

In count I of her complaint, the plaintiff in the Porter case alleges that (1) defendant lender, Smith-Rothchild Financial Co., originates mortgage loans; (2) [now-dismissed defendant] Docu-Tech prepares and sells documents for use in making mortgage loans; (3) the lender charged plaintiff a document preparation fee of $70 for filling out the note and mortgage and related documents; (4) the lender in turn paid the fee to Docu-Tech; (5) the document preparation services were not performed by an attorney; (6) neither the lender nor Docu-Tech is a professional corporation consisting of attorneys authorized to practice law; (7) it is the standard practice of the lender to charge a document preparation fee when it makes or arranges a loan; and (8) it is the standard practice of Docu-Tech to prepare loan documents for a fee. The complaint further alleges that the lender and Docu-Tech engaged in the unauthorized practice of law by performing document preparation services for a fee.

We need not decide in these cases whether the lenders may be held vicariously liable for the unauthorized practice of law engaged in by Docu-Tech because we hold that no private right of action for damages exists under the Attorney Act for the unauthorized practice of law.

D. Private Right of Action for Damages for the Unauthorized Practice of Law

One of the lenders’ arguments is that no private right of action for damages for the unauthorized practice of law exists in Illinois, absent allegations of otherwise actionable conduct. Although this court has not heretofore addressed this issue, the appellate court has had occasion to do so. Those cases have discussed the issue in the context of the Attorney Act.

In 
Rathke v. Lidisky
, 59 Ill. App. 3d 560 (1978), the plaintiff was the buyer in a real estate transaction. The contract with the sellers was contingent on putting a new roof on the garage. The plaintiff filed suit against the sellers and the real estate agents, alleging that the defendants had fraudulently misrepresented the structural soundness of the residence. She also alleged that one or more of the real estate agents had inserted the contingency provision in the printed sales contract and that this constituted the unauthorized practice of law and a violation of the Attorney Act. She did not allege negligence or that the defendants represented themselves to be attorneys. She sought actual and punitive damages. The appellate court rejected the plaintiff’s argument that the licensing provisions of the Attorney Act provide a basis for an actionable tort for the unauthorized practice of law because the statute had been enacted for her protection. The court concluded that the statute was intended to prevent the practice of a profession by those who are not licensed, rather than an attempt to legislate a standard of conduct. 
Rathke
, 59 Ill. App. 3d at 562.

In 
Torres v. Fiol
, 110 Ill. App. 3d 9 (1982), the plaintiffs filed suit against a non-attorney for the unauthorized practice of law. The trial court dismissed the complaint, citing the 
Rathke
 case for the proposition that no private cause of action for damages for the unauthorized practice of law is recognized in Illinois. The appellate court reversed and remanded, noting that the language of the Attorney Act explicitly provides that it does not preclude other theories of recovery against one who engages in the unauthorized practice of law and mishandles the matter. Since the plaintiffs alleged negligence on the part of the defendant in the handling of the legal services he undertook to render, they could proceed upon a negligence theory for the defendant’s improper activities. 
Torres
, 110 Ill. App. 3d at 11.

Plaintiffs cite 
Richard F. Mallen & Associates, Ltd. v. Myinjuryclaim.com Corp.
, 329 Ill. App. 3d 953 (2002) for the position that a private right of action for the unauthorized practice of law exists under the Attorney Act. The 
Mallen
 case, however, does not stand for that proposition. There, a law firm brought a class action lawsuit on behalf of all Illinois personal injury attorneys for an injunction against the defendant, an unlicensed business that operated a web site advising people injured in automobile accidents concerning their legal rights. Count I of the complaint, alleging unauthorized practice of law, was dismissed by the trial court on the ground that plaintiff lacked standing to bring the cause of action. The appellate court reversed, finding that an attorney is a proper party to bring such an action because the practice of law by unlicensed persons constitutes an infringement upon the rights of those who are properly licensed. 
Mallen
, 329 Ill. App. 3d at 956. The difference between the 
Mallen
 case and this case is that, here, plaintiffs seek compensatory and punitive damages in the counts of their complaints alleging a violation of the Attorney Act. The law firm in 
Mallen
 was not seeking damages, but rather an injunction, which is explicitly permitted by the Attorney Act.

The most fundamental rule of statutory construction is to give effect to the intent of the legislature. 
Carroll v. Paddock
, 199 Ill. 2d 16, 22 (2002). The best evidence of legislative intent is the language used in the statute itself and that language must be given its plain and ordinary meaning. 
Lulay v. Lulay
, 193 Ill. 2d 455, 466 (2000). “Under the guise of construction, a court may not supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute. [Citation.] If the language of the statute is clear, its plain and ordinary meaning must be given effect without resorting to other aids of construction.” 
In re Marriage of Beyer
, 324 Ill. App. 3d 305, 309-10 (2001).

Section 1 of the Attorney Act provides that any person practicing, charging or receiving fees for legal services without being licensed to practice law by this court is guilty of contempt of court and shall be punished accordingly upon a complaint being filed against that person. The statute goes on to provide that the contempt proceedings shall be conducted in the same manner as in cases of indirect contempt in the county in which the alleged contempt was committed. Thus, the statute permits a contempt sanction for the unauthorized practice of law. Its plain language does not provide for any other remedy for a violation of the statute, although it does say that the contempt remedy is “in addition to other remedies permitted by law.” Thus, any remedies provided in other statutes or by the common law are not foreclosed by the existence of the contempt remedy in the Attorney Act. Had the legislature intended to provide a cause of action for damages for violation of the Attorney Act, it could have easily done so. Accordingly, we hold that there exists no private right of action under the Attorney Act for damages.

E. Restitution and the Voluntary Payment Doctrine

Citing the “other remedies permitted by law” language of the Attorney Act, plaintiffs argue that the statute presents no barrier to their claim for restitution. Defendants argue that plaintiffs’ restitution claim is merely an attempt to restate their unauthorized practice of law claim by placing a restitution label on it. They also allege that plaintiffs have failed to properly allege a cause of action for restitution, and that plaintiffs may not maintain an action for restitution where a specific contract governs the parties’ relationship. We need not address these arguments because we agree with defendants that the voluntary payment doctrine bars plaintiffs’ claim for restitution.

“ ‘It has been a universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal. It has been deemed necessary not only to show that the claim asserted was unlawful, but also that the payment was not voluntary; that there was some necessity which amounted to compulsion, and payment was made under the influence of such compulsion.’ ” 
Getto v. City of Chicago
, 86 Ill. 2d 39, 48-49 (1981), quoting 
Illinois Glass Co. v. Chicago Telephone Co.
, 234 Ill. 535, 541 (1908); 
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 497 (1994).

The appellate court in Jenkins held that the voluntary payment doctrine barred the claims of all plaintiffs. Plaintiffs argue that the appellate court’s decision took an “extremely harsh” view of the voluntary payment doctrine, one that is at odds with this court’s decision in 
Illinois Graphics
. In that case, an employer and its workers’ compensation insurance carrier brought suit to recover payments made to the defendant employee who was later determined to be ineligible for benefits. The temporary total disability (TTD) benefits were paid while the claim was pending. At the arbitration hearing on the defendant’s claim, it was determined that the defendant’s medical records failed to show any causal connection between her work and her injury. The arbitrator denied her claim and the Industrial Commission affirmed that decision. No appeal was taken. The insurance carrier, State Farm, demanded that the defendant reimburse it for the TTD payments. The defendant refused and State Farm sued. The trial court dismissed the complaint and the appellate court affirmed. One of the grounds of the defendant’s motion to dismiss was that recovery of the payments was precluded by the voluntary payment doctrine. On that issue, this court determined that the complaint stated a claim based on the theory that the payments were made under a mistake of fact. Although the complaint did not state that the payment was based upon a mistake of fact, it could reasonably be inferred that the payments were made on incorrect and incomplete information regarding the nature of the claimed injury. Under such circumstances, the voluntary payment doctrine did not completely negate the claim. 
Illinois Graphics
, 159 Ill. 2d at 497.

Plaintiffs argue that this court has lowered the standard enunciated in prior cases for determining when the voluntary payment doctrine will apply. They note that in 
Illinois Graphics
, this court allowed a sophisticated insurance company to recover money voluntarily paid, even though the company must have known there was some chance that the defendant employee would not prevail on her claim. Unlike State Farm, plaintiffs argue, they proceeded with their loan transactions without full knowledge of the “critical fact” that no lawyer was involved in drafting the loan documents. We disagree that any standard has been lowered. We must point out that this court, in 
Illinois Graphics
, did not allow the recovery of payments by State Farm. We merely held that the defendant’s argument that the payments were voluntary did not completely negate State Farm’s claim for reimbursement because the claim was based on a mistake-of-fact theory. There were other issues not related to the voluntary payment issue and the case was remanded to the trial court for further proceedings.

Plaintiffs also argue that the appellate court in 
Jenkins
 gave no weight to the superior bargaining position of the defendant lenders, contrary to 
Illinois Graphics
. Plaintiffs refer to the following statement from this court’s opinion:

“In allowing the recovery, the court addressed the common law rule, known as the voluntary payments doctrine, that neither money paid under a claim of right with full knowledge of the underlying facts and absent coercion, fraud or
 a superior bargaining position
 by the transferee nor money paid under a mistake of law is recoverable.” (Emphasis added.) 
Illinois Graphics
, 159 Ill. 2d at 491.

As is evident from the quoted statement, this court was referring to a previous case that was being discussed at that point, 
Liberty Mutual Insurance Co. v. Zambole
, 141 Ill. App. 3d 803 (1986). Later on in the opinion, this court clearly stated the well-established rule:

“The rule is that in the absence of fraud, misrepresentation, or mistake of fact money voluntarily paid under a claim of right to the payment, with full knowledge of the facts by the person making the payment, cannot be recovered unless the payment was made under circumstances amounting to compulsion.” 
Illinois Graphics
, 159 Ill. 2d at 497.

Prior cases illustrate the application of the doctrine. In 
Ross v. City of Geneva
, 71 Ill. 2d 27, 34-35 (1978), this court held that the plaintiff was not barred from recovering payments made to the defendant for a surcharge on electrical service required under an ordinance that was determined to be invalid. The record showed that the defendant had a policy of terminating service for nonpayment of charges and that the defendant had done so on several occasions. Thus, confronted with the choice of paying the surcharge or termination of service, the plaintiff was not barred from recovery of the sums paid.

In 
Getto v. City of Chicago
, 86 Ill. 2d 39, 49-50 (1981), the plaintiffs were not barred by the voluntary payment doctrine from recovering payments made by them in excess of the amount owed under a municipal message tax. This court found that plaintiffs did not have full knowledge of the amounts they were paying and could not have made a proper statutory protest because the bills they received did not sufficiently itemize the charges being made. 
Getto
, 86 Ill. 2d at 49-50. Further, the court held that telephone service had become a necessity and that the implicit and real threat that telephone service would be terminated for nonpayment of the charges amounted to compulsion that would preclude application of the voluntary payment doctrine. 
Getto
, 86 Ill. 2d at 51.

In 
Geary v. Dominick’s Finer Foods, Inc.
, 129 Ill. 2d 389 (1989), plaintiffs sued to recover sales taxes they had paid on tampons and sanitary napkins. The appellate court held that the plaintiffs had not sufficiently pleaded duress under the voluntary payment doctrine when they alleged that tampons and sanitary napkins were necessities. This court reversed. In discussing the voluntary payment doctrine as applied to the payment of taxes, this court noted that taxes voluntarily paid may not be recovered even if the taxes were imposed illegally, absent a statutory right of protest. However, taxes are not voluntarily paid where either the taxpayer lacked knowledge of the facts upon which to protest the taxes at the time they were paid, or the taxpayer paid the taxes under duress. This court found that tampons and sanitary napkins are necessities of life and that no reasonable alternative products exist. The plaintiffs could not have obtained the products without paying the tax. The court rejected the defendants’ argument that the plaintiffs were required to plead that they could not purchase the products without paying the taxes or that the defendants threatened to or had an established policy of refusing to sell the products if a customer refused to pay the taxes. The court noted that State law required every retail store in Illinois to pay a state tax on receipts collected from the sale of their products. Chicago also imposed a city sales tax. Retail stores simply do not sell a product if the purchaser refuses to pay the tax on it. The court declined to require the plaintiffs to plead or perform a useless act. Courts have found coercion to be implied in certain circumstances. Thus, an actual threat is not necessary; implied duress is sufficient. 
Geary
, 129 Ill. 2d at 402-03.

Plaintiffs in the instant cases complain that the appellate court gave no weight to the economic consequences of not paying the document preparation fees. They argue that had they discovered at the closing that a nonlawyer prepared the loan documents and refused to pay the fees, they would have either have been in breach of their contracts of sale in cases involving a purchase money mortgage or, in cases of a refinancing, they would have likely incurred costs at least equal to the amount of the document preparation fees. They argue that they were operating under a mistake of fact because the defendant lenders did not inform them that the loan documents were prepared by nonlawyers. However, the exhibits attached to plaintiffs’ complaints demonstrate that the lenders fully disclosed that the document preparation fees were separate from any attorney fees. The closing statements contain separate places for the itemization of attorney fees and document preparation fees. Two lines below the space for the document preparation fee is a space to itemize any attorney fees, including the name of the attorney to whom the fee is paid. Accordingly, plaintiffs could not have mistakenly believed that the loan documents were prepared by attorneys. Both the Jackson and Porter closing statements show that no attorney fees were paid. Plaintiffs do not allege in their complaints or argue in their briefs that the lenders represented that attorneys prepared the documents, nor do they allege that they believed that attorneys prepared the documents. If they looked at their closing statements, any such belief would have been unreasonable. Therefore, we reject plaintiffs’ argument that they were operating under a mistake of fact regarding who prepared the loan documents. Plaintiffs further argue that where document preparation fees of $300 or $400 are charged, borrowers are likely to assume that the documents were prepared by lawyers and are thus discouraged from retaining their own legal counsel. Even if that might be true where such large sums are charged for document preparation, no such conclusion can be drawn here, where the document preparation fees charged in the Jackson and Porter cases amounted to $60 and $70, respectively.

Further, we note that plaintiffs do not plead any facts in their complaints that might demonstrate that they were compelled to either pay the fee or forego their loan transactions. Unlike the plaintiffs in 
Geary
, where the retail defendants were required by law to collect taxes on the products plaintiffs purchased, it is not clear that all mortgage lenders prepare their own documents or utilize the services of a document preparation service. In fact, the complaint in the 
Jackson
 case contains the following statement: “A document preparation fee is ‘a separate fee that 
some
 lenders or title companies charge to cover their costs of preparation of final legal papers, such as a mortgage, deed of trust, note or deed.’ ” (Emphasis added.) This statement is attributed to a publication of the Department of Housing and Urban Development. Thus, it is not certain, as it was in 
Geary
, that plaintiffs here had no choice but to pay the fees charged by their lenders. For instance, plaintiffs do not allege that they were precluded by the lenders from having the documents prepared by their own attorneys. Reduced to its essence, plaintiffs’ argument is that the preparation of loan documents by nonlawyers is illegal. However, the voluntary payment doctrine applies in the very circumstance where the payment sought to be recovered was illegally obtained by the defendant. Plaintiffs cannot avoid application of the doctrine by merely alleging that defendants engaged in the unauthorized practice of law.

Plaintiffs argue that the voluntary payment doctrine should not be applied to them because that doctrine cannot be used to defeat public policy. They argue that where parties are not 
in pari delicto
 and the prohibition violated was intended to protect one of them, that party can recover money paid. The phrase “
in pari delicto
” means “[e]qually at fault.” Black’s Law Dictionary 806 (8th ed. 2004). The doctrine of 
in pari delicto
 embodies the principle that “a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.” Black’s Law Dictionary 806 (8th ed. 2004).

Plaintiffs cite cases in support of their public policy argument. In 
Evans v. Funk
, 151 Ill. 650 (1894), a probate judge acted as an attorney in obtaining a settlement of a dispute among heirs that was before his court. He obtained fees for this service. The heir who paid the money brought suit to recover it on the basis that it had been made to secure a settlement and not as attorney fees. This court allowed the recovery on the basis of the judge’s power over the heir and the estate at issue and to protect the public from “ ‘fraudulent practice and artifices.’ ” 
Evans
, 151 Ill. at 661, quoting 
Baehr v. Wolf
, 59 Ill. 470, 474 (1871).

Plaintiffs also cite 
Ransburg v. Haase
, 224 Ill. App. 3d 681, 687 (1992), where the plaintiffs sued to recover money paid to an architect, alleging that their contract was void because the architect misrepresented himself to be licensed in Illinois. The appellate court analyzed the Illinois Architecture Act in holding that the architect had violated the statute by holding himself out to the plaintiffs as an architect in Illinois. The purpose of the statute was to protect the public. The court distinguished cases cited by the architect, noting that there were no allegations that the plaintiffs knew that the architect was not licensed in Illinois. Rather, the architect represented himself to be so licensed.

Plaintiffs cite other cases where courts refused to permit an unlicensed party to recover fees for services or to otherwise enforce a contract. See 
Lozoff v. Shore Heights, Ltd.
, 66 Ill. 2d 398 (1977) (attorney licensed in Wisconsin but not licensed in Illinois and who represented clients in Illinois with respect to a out-of court matter not allowed to recover fees); 
Tovar v. Paxton Community Memorial Hospital
, 29 Ill. App. 3d 218 (1975) (physician not licensed in Illinois could not enforce employment contract with hospital); 
Kaplan v. Tabb Associates, Inc.
, 276 Ill. App. 3d 320 (1995) (building contract was void where corporate architect was not licensed in Illinois).

The cited cases are distinguishable from the instant case. In 
Evans
, the probate judge misapplied funds meant for another purpose. In 
Ransburg
, the architect misrepresented himself to be a licensed architect. In 
Lozoff
, 
Tovar
, and 
Kaplan
, the unlicensed parties were seeking to enforce contracts that the courts determined were void and unenforceable. As was stated in 
Tovar
, the courts will not aid a plaintiff who bases his cause of action on an illegal act. 
Tovar
, 29 Ill. App. 3d at 221. Here, however, no misrepresentation was involved and the lenders are not seeking to enforce void contracts. Rather, plaintiffs seek to recover payments voluntarily made with full knowledge as to the nature of the services rendered. Thus, we reject plaintiffs’ public policy argument as it applies to their cases.

Finally, plaintiffs argue that the voluntary payment doctrine cannot apply here because they did not actually pay any amounts out of pocket for the document preparation fees. Rather, they allege in their brief that the fees were generally deducted by the lenders from the loan proceeds and then paid over to Docu-Tech.

“Restitution” is defined by Black’s Law Dictionary as “[T]he set of remedies associated with that body of law, in which the measure of recovery is [usually] based not on the plaintiff’s loss, but on the defendant’s gain,” and “[r]eturn or restoration of some specific thing to its rightful owner or status.” Black’s Law Dictionary 1339 (8th ed. 2004). The doctrine of restitution contemplates, therefore, that some benefit has passed from the plaintiff to the defendant. Plaintiffs obviously believe that they are entitled to a return of that benefit. Whether it comes in the form of cash, a check, or a credit to plaintiffs’ loan balances matters not. Plaintiffs cannot make a claim for restitution for money they claim to have paid, while simultaneously arguing that the voluntary payment doctrine cannot be applied because they did not make a payment. If the document fee that was paid in these cases was paid out of plaintiffs’ loan proceeds, it nonetheless came out of plaintiffs’ pocket in the end. They do not argue that the fees were paid by anyone but themselves. Under these circumstances, the voluntary payment doctrine applies.

CONCLUSION

In summary, we hold that where the defendant lenders prepared the subject loan documents, through their employees, they did not engage in the unauthorized practice of law by charging a fee. We also hold that no private right of action exists under the Attorney Act for damages for the unauthorized practice of law. We further hold that plaintiffs’ restitution claims in the Jackson and Porter cases are barred by the voluntary payment doctrine. Accordingly, for the reasons stated, we affirm the judgments of the appellate court.

Appellate court judgments affirmed.

JUSTICE KARMEIER took no part in the consideration or decision of this case.